The opinion of the Court was delivered by
HUGER,, J.
1. In support of the will, it is contended that there can ^.nhK-i be no revocation of a will executed, according to *the statute of ^ frauds, by the tearing and obliterating the seal; and,
2. That supposing the destruction of the seal to a will may, in the abstract amount to a revocation of it, yet, that the revocation in this case, was not an absolute self-subsisting revocation, but depended upon the substitution of another will, which having failed, the revocation is incomplete, and the will therefore must be valid. I shall consider these grounds in their order.
The statute of frauds, which has been made of force in this State, declares that all “ devises and bequests, duly made and executed, shall continue in force until the same be burnt, cancelled, torn, or obliterated, by the testator, or by his directions,” &c. &c.
The degree of burning, cancelling, tearing, or obliterating, necessary to the revocation of a will, is not fixed by the statute. This must depend upon the circumstances of the case.
If a will be thrown into the fire, and is consumed, or if it be torn into many pieces by the testator, the violent presumption would be, that the instrument was burnt or torn animo revocandi and it would require strong evidence to rebut this presumption ; but if a will be only slightly burnt, or slightly torn, there would arise no presumption from the act itself, of the intention, or the quo animo, with which it had been done, and the will would not be revoked ; but if the slightest burning, or the slightest tearing, be accompanied with satisfactory evidence, drawn aliunde of the intention to revoke, the statute will be satisfied, and the instrument be revoked. Burtenshaw v. Gilbert, 1 Cowp. 59. 4 Cruise, tit. Dev. 93. Pow. on Devises, 634.
In this case, the jury have found that the will was torn animo revo-candi. It cannot be important what part of the will be torn. The seal, though unnecessary to the will, was made a part of it.by the testator. The first two or three lines are equally unnecessary, and yet it would not be contended, if these lines had been torn from the instrument animo revo-candi, the statute would not be satisfied. Although the words *of -* our Act[1] of 1789, P. L. 491, 2 Brev.-Dig. 35, are not precisely those used in the statute of frauds,[2] they are so much alike as to make it almost unnecessary to notice them. The Act of 1789, uses the word, destroying, instead of burning, cancelling, and tearing ; the former ap *539 pears to include them all; a will burnt, cancelled, or torn animo revo-candi is destroyed.
On the second ground, it is contended that the will was not absolutely revoked ; that the seals were torn off, the paper crossed, and interlinea-tions made with the intention of making another will; and that as another will was not made, the tearing of the seals, and the crossing of the paper, and the interlineations, are nugatory. But this is contradicted by the verdict. The jury expressly find that the seals were torn off with an intention to revoke the said will, and not to alter the said will, or with an intention to make another will, as contended. A number of facts are stated in the verdict, the crossing, the interlineations, the directions for another will, that the will was found in a private desk, and so on, from which the jury deduced the conclusion, that the seals were torn off with an intention to revoke. The testator appears to have preferred another will to intestacy, but it does not appear that he preferred the will in question to intestacy! The will directed, but not executed, was materially different; probably as variant from the one in question as that which the law would have supplied, nor does it appear that the seals were torn from the instrument at the time a new will was directed to be drawn : it may have been long after, when even the disposition to make another may have subsided. In the ease of Onions v. Tyrer, 1 P. Wms. 343, which is the leading case in this point, there existed no doubt as to the intention of the testator. He had executed his will to pass lands ; by a second will, he expressly revoked the first, and likewise ordered it to be torn, which was done. The second will was attested by three witnesses, but they did not subscribe iu presence of the testator. The statute of frauds is variant in its provisions* respecting the making and revoking of a devise. The 4th (5 ?) clause, as to making a devise, requires *- attestation in the presence of the testator by the three witnesses. The 5th (6 ?) clause, as to revoking by will, requires attestation simply by three witnesses. The second will in the case cited, conveyed the land to the same uses with the first, and only the trustees were changed; as the second will had not been attested by three witnesses, in the presence of the testator, it was invalid as to land ; but as the first will was only revoked for the express purpose of substituting the second, it was decided as the second was not valid for the purpose intended, the first was not revoked. The revocation and substitution were one entire act; they constitute a single declaration of the mind, which could not be garbled without violating a common rule of evidence; but in this case, the directions for the draft of a new will, were not only materially variant from the old will, but were not contemporaneous with the crossing or with the tearing of the seals; the crossing, tearing of the seals, and directions for a new will, were not included in one entire act of the mind; they were not parts of one declaration, and therefore make a very different ease from that of Onions v. Tyrer ; and even in this case, relief was afforded by the Lord Chancellor, on the ground of accident. The recent case of Pringle v. M'Pherson,[1] 2 Des. 524, is still more distinguishable from this case. There the testator exhibited no disposition to make another will; he appears to have thought that he could, by interlineations, subsequent to *540 execution, alter a devise in his will; the alterations attempted were small; the will was neither burnt, cancelled, torn, nor obliterated; the statutory symbols were not only wanting, but the animus revocandi did not exist. Upon the whole, I am satisfied that the revocation was unconditional, and that the decree of the Ordinary ought to be reversed.
Colcocic, Nott and JohnsoN, JJ., concurred.
Post. 482; Harp. 314; 2 McC. 521; 3 MoC. 282.

 5 Stat. 107, 5 3.

 2 Stat. 526, § 6.

 2 Brev. 279.