## BAUSKETT v. KEITT.

1. In considering alleged errors in a charge, the charge must be considered as a whole, and not in detached portions.
2. Where a will is traced to the possession of testator, but cannot be found after his death, there arises a presumption of destruction by him; this, however, is a presumption of fact, rebuttable by evidence. If the depositories of the deceased pass into the custody of the heirs at law,

and his papers are first examined by them, this does not, as matter of law, rebut the presumption, but is a circumstance to be considered by the jury in determining this question of fact.

3. Petitioners to establish an alleged lost will cannot assign error to the judge in charging that the fact that the persons most interested in the destruction of a will were the first and only persons to examine the depositories and papers of the deceased, was a strong circumstance to rebut the presumption of cancellation by testator, but that whether *sufficient* evidence or not was a matter for the determination of the jury.

4. The Circuit judge could not, without invading the province of the jury, charge "that where there are no corroborating circumstances, the presumption that the loss of the will is due to the act of the testator, rather than to other causes, belongs to the lowest order of proof, and has no other effect than that of obligating the party who denies it to establish his case by some affirmative evidence."

5. The law will presume a destruction of a will by the testator (an innocent act) rather than by the heirs simply because of their opportunity of so doing, as this would be a criminal act.

6. An error in a charge resulting from a misapprehension of the request is no ground for a new trial, the matter requested having been afterwards fully and clearly charged by the judge.

7. Petitioners alleged that a lost will was witnessed by A, B, and C. A and B testified that it was so witnessed, but C testified that he had never signed such will as a witness. *Held*, that the judge properly refused to charge the jury "that if they should come to the conclusion that the paper propounded is substantially the last will executed by deceased in the presence of A, B, and another witness who was not C, their finding should be for petitioners, unless they find that said will was subsequently revoked or destroyed."

8. Declarations of the testator are admissible to prove the destruction by him of his will.

9. There was no error in refusing to charge "that if the jury find that a duly executed will of the deceased was in his possession after he was physically unable to destroy it, the presumption that such will, if not found at his death, was destroyed by him, is rebutted."

10. Where two witnesses testified that an alleged lost will had been executed in the presence of themselves and another witness, all of whom had signed as witnesses, and such other witness denied it, the judge could not charge that the will was sufficiently proved, but he properly left this matter to the jury to be determined by them.

11. The contents of a letter from plaintiff to deceased could not be proved in behalf of plaintiff by parol testimony, there being no proof of loss and no notice to the representatives of the deceased to produce it.

12. A witness, C, called by plaintiff, testified that deceased had entrusted him with a message to plaintiff, which he had delivered, and what that

message was. Plaintiff then offered himself to prove that the message so delivered was of a different tenor, and also another witness to prove C's statement that the message was other than that testified to. *Held*, that plaintiff's object being to discredit his own witness, the testimony offered was incompetent.

13. An exception not considered because too general in its terms.

14. Findings of fact concurred in by Circuit judge and jury, and by Circuit judge and Probate judge approved.

Before HUDSON, J., Newberry, November, 1883.

This was a petition in the Probate Court for Newberry County, filed by John Bauskett and Elizabeth Reid, devisees and legatees under an alleged lost will of Thomas B. Wadlington, deceased, praying that said will might be established and admitted to proof in solemn form. Thomas W. Keitt and Joseph L. Keitt, as administrators of said deceased, and they, together with their sister, Harriet A. Keitt, as distributees under the statute were the parties defendant. A copy of the alleged lost will, furnished by the draftsman, was set out in the petition. The case is fully stated in the opinion of this court.

*Messrs. Moorman & Simkins, L. F. Youmans*, and *Johnstone & Cromer*, for appellants.

*Messrs. Suber & Caldwell*, contra.

March 2, 1885. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was a proceeding, originally commenced in the Court of Probate for Newberry County, for the purpose of setting up an alleged lost will of one Thomas B. Wadlington, deceased, and having the same admitted to probate in solemn form. The petition set out a copy of what was alleged to be such lost will, which purported to have been executed in April, 1873, in the presence of R. V. Gist, Caroline Sondley, and Richard C. Sondley as subscribing witnesses. The judge of probate seemed to be of opinion that such a will was at one time executed, but found that the same had been revoked by the testator, and he therefore declined to admit the paper propounded as the will of Wadlington to probate.

From this decree the plaintiffs appealed to the Court of Common Pleas, and at the trial moved for and obtained an order to amend their petition by striking out the name of Caroline Sondley and inserting in lieu thereof the name of John R. Sondley as one of the witnesses to the alleged lost will. The Circuit judge ordered that the following question of fact be referred to a jury for determination, viz.: "Did Thomas B. Wadlington, late of the County of Newberry, die leaving of full force and effect a last will and testament of the same purport and like effect as the will alleged by plaintiffs to be lost, mislaid, or destroyed, and sought by them in these proceedings to be established and admitted to probate?" In response to the question submitted to them, the jury found, "No."

The Circuit judge then rendered his decree, fully concurring in the finding of the jury, saying that the evidence did not, in the first place, establish the due execution of the paper propounded as the will of Wadlington; and, in the second place, that the paper, whether duly executed or not, was traced to the possession of Wadlington, and its not being found after his death raised the presumption that he had revoked it, which the evidence offered for that purpose was not sufficient to rebut. He therefore dismissed the appeal and affirmed the judgment of the Court of Probate. From this judgment the plaintiffs appeal to this court upon various exceptions, which will be considered *seriatim.*

1. "Because the judge erred in charging and refusing to charge the jury as follows: (1) In refusing to charge that if the will has been traced into the possession of Wadlington, and at his death could not be found by his heirs at law, who alone had the custody of his depositories and examined his papers, the presumption that the testator destroyed the will, with the intention of revoking it, is not a presumption of law, but a presumption of fact, and rebuttable; and in charging the jury directly that the fact that if the will was traced into Wadlington's possession and could not be found at his death by his heirs at law, who alone had the custody of his depositories and examined his papers, was not sufficient to rebut the presumption of revocation by the testator." Upon this request, the Circuit judge instructed the jury as follows: "This alone will not be sufficient to rebut the pre-

sumption of its revocation by testator. It is but a circumstance to be considered by the jury. If the heirs had custody before death, it would be sufficient to rebut." In this we think there was no error.

In considering alleged errors in a charge, it is manifestly the duty of this court to consider the charge as a whole, and not in detached portions merely. As is said by Mr. Justice Story, in *Magniac* v. *Thompson*, 7 *Peters*, 390, affirmed in *Spring Co.* v. *Edgar*, 99 *U. S.*, 659 : "In examining the charge for the purpose of ascertaining its correctness in point of law, the whole scope and bearing of· it must be taken together. It is wholly inadmissible to take up single and detached passages and to decide upon them without attending to the context, or without incorporating such qualifications and explanations as naturally follow from the language of other parts of the charge. In short, we are to construe the whole as it must have been understood, both by the court and the jury, at the time when it was delivered." See also remarks of Simpson, C. J., to the same effect in *Lynn* v. *Thomson*, 17 *S. C.*, 138. Now, when we examine the whole charge of the Circuit judge in this case, it is quite manifest that, as to the point immediately under consideration, he instructed the jury that where a will is traced to the possession of a testator, and it cannot be found after his death, a presumption arises that he had revoked it by destroying it; that this, however, would be a presumption of fact, and therefore capable of being rebutted· by other evidence, and that it would be for the jury to. say, from all the evidence, whether such presumption had been rebutted.

It is clear, therefore, that he could not have instructed the jury that the fact that the will could not be found by the heirs at law, who alone had the custody of the alleged testator's depositories and examined his papers, was sufficient to rebut such presumption, but, on the contrary, that he should have instructed them as he did that this was a circumstance to be considered by them in determining whether the presumption was rebutted. Otherwise, he would have been invading the province of the jury and assuming to determine the weight and effect of the evidence. In *Durant* v. *Ashmore*, 2 *Rich.*, 184, the rule is laid down, as

fully sustained by the authorities, that a presumption of revocation arises from the fact that a will, which has been traced to the possession of a testator, cannot be found at his death; but that this is a presumption of fact which may be rebutted by other evidence showing its existence, and of course, therefore, it is a question for the jury, and not for the judge, to determine what evidence will rebut such presumption. See also *Betts* v. *Jackson*, 6 *Wend.*, 173.

The second subdivision of exception I. is as follows: "In refusing to charge that the loss, destruction, or suppression of a will does not require direct or positive proof; it may be, and often is, inferred with great certainty from attendant circumstances; and among the circumstances furnishing strong presumption of such being the case is that the depositories of the deceased testator, before they could be searched by any independent person, were accessible to, and investigated by, the only persons interested in the loss, suppression, or destruction of the will, if it existed; and in charging, upon the request so to charge, this is a fact tending to rebut such presumption." The language of the Circuit judge, in response to this request, is not fully set forth in the exception, but was as follows: "This is a fact tending to rebut such presumption. Such a case as is set forth in this request would tend to rebut (and would be a strong circumstance to rebut) the presumption of destruction by the testator. But I cannot say such evidence is sufficient to rebut that presumption; that is a matter for the jury to pass upon." We do not see what more the appellants could ask. If, however, the point of this exception is that the judge failed to notice the first branch of the request that the destruction of a will need not be proved by direct and positive evidence, but may be inferred from attendant circumstances, we think the objection is fully met by the whole tenor of the charge upon this point by which it was clearly left to the jury to say, from all the facts and circumstances developed by the evidence, whether the presumption of revocation arising from the failure to find the will was rebutted.

The third subdivision of this exception is as follows: "In refusing the charge that where there are no corroborating circumstances, the presumption that the loss of the will is due to the

act of the testator, rather than to other causes, belongs to the lowest order of proof, and has no other effect than that of obligating the party who denies it to establish his case by some affirmative evidence." Such a charge as this could not have been given without invading the province of the jury, by assuming to determine the strength or the weight of the evidence, which is clearly the prerogative of the jury; and the Circuit judge having left it to the jury to say whether the facts and circumstances adduced in evidence were sufficient to rebut the presumption that the testator had himself revoked his will, arising from the failure to find it at his death, did all that appellants' could properly require of him.

In this case there was no allegation or evidence tending to show that the will had been destroyed by accident, but the whole case of the plaintiffs depended upon their being able to show that the will was destroyed by the heirs at law because it was to their interest so to do. This would have been a criminal act on their part, and to establish it there must be evidence satisfactory to the tribunal (in this case the jury) entrusted with the trial of the issue. Indeed, the very ground upon which the rule is based, that where a will is traced to the possession of the testator, and it cannot be found after his death, the presumption is that the testator himself revoked it, is, that the law will presume that an innocent, rather than a criminal, act has been done. Hence, in such a case, the law will presume that the will was destroyed by the testator, which would be an innocent act, rather than that it was destroyed by the heirs at law, even though they might have an interest so to do, and might, by reason of their close relations to the testator, have the best of opportunities of so doing; because, if they did it, their act would be a criminal one, which the law will not presume, but will require to be established by satisfactory evidence. See *Knapp* v. *Knapp*, 10 *N. Y.*, 276.

The fourth subdivision of this exception is as follows: "In refusing to charge that one credible witness is sufficient to prove the contents of a lost, suppressed, or destroyed will, and he need not be a subscribing witness." Inasmuch as there was no controversy whatever as to the contents of the alleged will which

13

the appellants were seeking to set up, it would seem to be of small consequence what the Circuit judge may have said to the jury upon this subject. While it is true that the Circuit judge, in response to this request, did say, "Not if the subscribing witnesses are alive and within the jurisdiction of the court and present testifying," this remark was manifestly made under a misapprehension of the request, and intended to apply to the *execution* of the will, which *was* a matter in controversy, and not with reference to proof of its contents, which was *not* a matter in controversy, and could not possibly have misled the jury, for in his general charge to the jury he distinctly instructed them "that one credible witness would be sufficient to establish, by parol, the contents of a lost or destroyed will; but that in this case there was no contest on that point, the contents of the alleged will having been testified to by competent witnesses, who were not contradicted." We do not think it possible, therefore, that the qualification of the request could have had the effect of misleading the jury, as they were, in effect, told that the contents of the will were established, and that there was no controversy on that point.

The fifth subdivision is as follows : "In refusing to charge that if the jury should come to the conclusion that the paper propounded is substantially the last will and testament executed by Thomas B. Wadlington, in the presence of R. V. Gist and R. C. Sondley, and another witness, who was not John R. Sondley, their finding should be for the petitioners on the issue submitted to them, unless they find that said will was subsequently revoked, obliterated, cancelled, or destroyed." The response to this request was in these words: "The jury cannot conjecture, in face of testimony of plaintiffs to the contrary, that a third unknown person must have witnessed the execution." When it is remembered that a verdict of a jury must always be based upon some testimony adduced in the case, or upon some inference properly deducible from the testimony offered, we see no ground for the error imputed to the Circuit judge.

The only witnesses examined as to the execution of the will were R. V. Gist, R. C. Sondley, and John R. Sondley ; the two former of whom both testified positively that they, together with

John R. Sondley, were the attesting witnesses, while the latter positively denied that he had ever witnessed a will for Wadlington or any one else, and that the other two witnesses were mistaken in saying that he had.    It will be observed that Gist and R. C. Sondley do not say simply that they *with another* attested the will, and that they *believed* John R. Sondley was the other witness, but, on the contrary, they say positively that John R. Sondley was the third witness.    It will also be observed that John R. Sondley does not speak doubtfully ; he does not say that *he has no recollection* of ever having attested, or that he does not *believe* that he signed the will as a witness, but says positively that he never did.    It is quite clear, therefore, that the testimony of these witnesses not only furnished no evidence whatever that R. V. Gist, R. C. Sondley, and some unknown third person were the subscribing witnesses, but, on the contrary, positively disproved the fact that an unknown third person was one of the witnesses.    If, therefore, the jury had been instructed as requested by the plaintiffs, they would have been instructed that they could find a verdict not only without any testimony whatever to support it, but directly in the teeth of the testimony adduced by the plaintiffs themselves.    Nor will it do to say that the testimony of Silas Johnstone would have been sufficient to warrant such an instruction to the jury, for, aside from the fact that his testimony was very doubtful and uncertain, he named Gist and two of the Sondleys as witnesses, and as the only two Sondleys that we hear of, besides Richard, are Caroline and John R., and as the plaintiffs concede that Caroline was not a subscribing witness, his testimony comes at last to the same as that of Gist and Richard C. Sondley.

The case of *Watkins* v. *Watkins*, 13 *Rich.*, 66, differs very materially from this case.    In that case the will was executed in the ordinary's office, while five persons named were present, and the undisputed testimony was that three of the five attested the will, the only difficulty being to designate with certainty which one of the five was the third witness.    None of the five denied signing as a witness, though two of them said they had no recollection of the transaction.    The Court said: "It is immaterial that some of them may remember nothing of the transaction (*Fil-*

*son* v. *Filson*, 3 *Strob.*, 288), although it is material to know who were the subscribing witnesses, that their competency may be judged of properly; but when all the five present at the execution are produced and found competent, it is not very important which three of the five attested." In that case the testimony might well warrant a verdict that the will was executed in the presence of three competent witnesses, because, while it failed to designate with certainty *which three* of the five subscribed as witnesses, it did show that three of five named persons, *all* of whom were competent, did sign as witnesses. Indeed, this case seems to be opposed to the doctrine contended for by appellants, for if, as it is said, "it is material to know who were the subscribing witnesses, that their competency may be judged of properly," the request could not properly have been granted, for it involved the idea that the jury might find that the third witness was some *unknown* person whose competency could not, of course, be judged of properly.

The sixth subdivision is as follows: "In refusing to charge that the declarations of the testator cannot be admitted to prove the destruction of his will." In this there was no error. *Durant* v. *Ashmore*, 2 *Rich.*, 184. See, also, remarks of Walworth, Ch., in *Betts* v. *Jackson*, 6 *Wend.*, 173. And see *Reeves* v. *Booth*, 2 *Mill Con. R.*, 334.

The seventh subdivision of this exception is in the following language: "In refusing to charge that if the jury find that a duly executed will of Thomas B. Wadlington was in his possession after he was physically unable to destroy it, the presumption that such will, if not found at his death, was destroyed by him, is rebutted." In response to this request, the judge said to the jury: "I cannot say what is, or what is not, sufficient proof. I can only say that it would be a fact to be weighed by the jury." In this there was no error; for, besides the fact that the request called upon the judge to invade the province of the jury and determine the effect of certain evidence upon an issue of fact which they were called upon to try, the request ignored the possibility that the testator might, though physically unable to destroy his will, direct its destruction by some one else.

The second exception is as follows: "In charging that where

the will is not produced, and two witnesses swear that they and a third witness, naming him, saw the testator sign an instrument, in form a will, which he then and there stated to be his will, in the presence of themselves and said third witness, and that they and said third witness subscribed as witnesses in the presence of the testator and of each other, and said third witness swears that he did not sign such instrument as a witness, said instrument was not sufficiently proved as a will, even though the jury believed the first two witnesses." On examing the general charge of the Circuit judge, it will be found that he did not instruct the jury as complained of in this exception. On the contrary, his language was that "in the case of a will alleged to have been lost, mislaid, or destroyed, while it is necessary that three persons should have witnessed the same in the presence of the testator and of each other, and while it was the duty of those propounding the will for probate to present and examine all three of the alleged witnesses (if of sound mind and accessible to the court), yet that if one of the alleged witnesses should deny his attestation, the other two would be sufficient to establish his attestation, if the jury should believe those two in preference to the third one denying. But that it is a matter for the jury to determine whether they will believe the testimony of the two, or that of the third one."

It is true that in response to the first request of the plaintiffs, the Circuit judge did use certain language, which, if taken by itself, and not in connection with the context and the whole tenor of the charge (which, as we have seen above, it is altogether inadmissible to do), might afford some warrant for this exception. The plaintiffs' first request to charge was in these words: "That where two credible witnesses swear that they saw testator sign an instrument, in form a will, which he then and there stated to be his will, in presence of themselves and another credible witness, and that they and said other witness subscribed as witnesses, in the presence of the testator and of each other, and said other witness has no recollection of the transaction, said instrument is sufficiently proved as a will, and should be admitted to probate if there is sufficient proof of the contents, and revocation of the instrument has not been proved." In response to this request, the

judge said : "If the will were produced and the handwriting of the third were proved, then the proposition would be sound ; but not so where the will is not produced, and the third man swears he did not sign it. Should the third man, in the last case, only swear that he has no recollection of signing, the jury may, if they believe the first two witnesses, regard the will sufficiently proved. It would be a question of fact for the jury."

Now when this language is construed with reference to the context, and when it is regarded as in response to the proposition contained in the request, and especially when it is considered in connection with the language of the general charge, we see no inconsistency and no error. The request was to charge that, in the case supposed, the instrument would be "*sufficiently proved as a will.*" This the judge could not do without invading the province of the jury, for it was for them to say whether the proof was sufficient. And when, as in the case stated in the response to the request, the third witness denied signing, it would be for the jury to say whether they believed the two witnesses or the third. The real proposition which the judge characterized as unsound, was that he should instruct the jury that in the case of a lost will, where two witnesses testify that it was duly executed in their presence, and that of a third who denied signing as a witness, it was "sufficiently *proved as a will.*" This would be, manifestly, an unsound proposition, unless it was qualified, as the judge did qualify it in his general charge, by instructing the jury that in such a case it would be for them to determine whether they would believe the two witnesses who testified to the attestation of the paper propounded as a will by three witnesses, or the third who denied that he had so attested, and that if they believe the two in preference to the third, then the will would be sufficiently proved.

The third exception is as follows : "Because the presiding judge, as to the testimony, erred as follows : (1) In refusing to allow a witness for the petitioners to state the contents of a letter from Bauskett to Wadlington, which Wadlington read to him at the same time of a conversation between them, detailed by the witness." There can be no doubt that the letter itself would furnish the best evidence of its contents, and in the absence of

any evidence of its loss, or of any notice to the other side to produce it, parol evidence of its contents was clearly inadmissible to show the contents of the letter.

The second and third subdivisions of this exception, resting upon the same principles, may be considered together. Their language is as follows : (2) "In refusing to allow the petitioner, John Bauskett, to testify as to what the message was which had been delivered to him by one Clamp, as the message entrusted to Clamp by Wadlington, on his death-bed, to be conveyed to Bauskett, Clamp having already testified that a message was so entrusted to him by Wadlington, and that he had delivered it, and having also given his statement of the same ; and in refusing to allow Bauskett to testify that the message delivered to him by Clamp was different from that detailed by Clamp on the stand. (3) In refusing to allow another witness offered by the petitioners to testify what Clamp had stated to him was the message so received and delivered by him as being different from the message testified to by Clamp." Inasmuch as Clamp was offered as a witness by the plaintiffs themselves, it is quite clear that it was not competent for them to offer any evidence tending to impeach his credibility, either by testimony as to his general character, or that he had made statements inconsistent with those made by him on the stand. See *Perry* v. *Massey*, 1 *Bail.*, 32, as construed in *Farr* v. *Thompson*, *Cheves*, 44 ; *Bank* v. *Shier*, 4 *Rich.*, 240. It is quite clear that the object here was to discredit Clamp, the plaintiffs' own witness, which could not be done.

The fourth subdivision of this exception is as follows : "In refusing to allow the petitioners to testify about transactions and communications with Wadlington during his life." As a matter of fact one of the petitioners, Bauskett, was not prohibited from testifying as to transactions or communications with Wadlington, for although an objection to his so testifying was sustained on his examination in chief, yet when he was examined in reply, the Circuit judge held that the door was opened to such testimony by the course of the cross-examination, and the witness was permitted to testify as to communications between himself and the deceased. As to the other petitioner, Eliz. Reid, she was clearly incompetent to testify to any transactions or communications

between her and the deceased, under section 400 of the Code of 1882.

The fourth and last exception is as follows: "Because the presiding judge erred: (1) In finding that the evidence did not establish the due execution of the instrument as a will. (2) In finding that, if duly executed, the will was revoked by the testator. (3) In dismissing the appeal from the Probate Court." The last of these subdivisions is, as has often been held, too general in its terms to require any notice at the hands of this court, and the other two subdivisions raise questions of fact. While there may be some room for difference of opinion as to the execution of the will, there certainly is not such manifest error as would warrant this court in disturbing the finding of the court below. But even if there were, the finding on the question of revocation, in which we fully concur, would be quite sufficient to sustain the judgment appealed from. We do not think there was evidence sufficient to rebut the presumption of revocation arising from the failure to find the will, which had been traced to the possession of the alleged testator; certainly none to fix upon the heirs at law, or any one of them, the imputation that they had destroyed the will.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.