0736

In Re ESTATE OF Roma MASON, Deceased, Ruth H. Carlton, Respondent
v. Charles Calvin MASON, Ruby Ingle, Alma Spooner, Clyde Mason,
Larry Crymes, Jerry Crymes, Lonnie Crymes, Defendants, of whom
Alma Spooner is Appellant. Appeal of Alma SPOONER.

(346 S. E. (2d) 28)

Court of Appeals

*Adam Fisher, Jr.*, and *Richard J. Chiariello*, Greenville, *for appellant.*

*James R. Mann*, Greenville, *for respondent.*

June 23, 1986.

GARDNER, Judge:

Appealed order emanates from a *de novo* trial before the Court of Common Pleas of a case arising from a petition by Ruth H. Carlton[1] to provide the will of Roma Mason (Roma) in due form of law by the exemplification of a photocopy of the will. The original will was admittedly destroyed before Roma's death. The appealed order held that the testator did not destroy *animo revocando* his will, ordered the exemplification of the photocopy of the will and its probate in due form of law. We reverse and remand.

In summary, the trial court ruled, over objection, that Ruby Ingle's testimony was admissible and that the testimony of Alma Spooner and other opponents of the proof of the will was not admissible.

The dispositive issue before us is whether the trial judge erred by ruling, over objection, that Ruby Ingle's testimony did not bring her within the purview of the Dead Man's Statute.

By agreement the case was tried by the judge without a jury. At the outset of the trial, the parties agreed that objections would be reserved but that at that time a blanket objection was made to any evidence which the trial court might determine inadmissible. The court summarized their agreement thusly: "In other words, what you are doing now is you are making a blanket objection, both of you, to any testimony you feel is not admissible, and I will rule on that later."

Although the specific objections made at the conclusion of the testimony are not of record, from the exceptions of appellant Alma Spooner, we conclude that she objected to the testimony of Ruby Ingle, a proponent of the proof of the will, on the grounds that the testimony violated the Dead

---

[1] Mrs. Carlton died before the trial of the matter. The record before us does not reflect a substitution for her. Apparently Ruby Ingle, whose testimony is at the center of this controversy, was substituted.

Man's Statute. The trial judge ruled that Ruby Ingle's testimony did not violate the Dead Man's Statute and, therefore, there was no waiver to permit rebuttal testimony by Alma Spooner, among others, which was proscribed by the Dead Man's Statute.

Roma's will, executed on April 29, 1976, prior to the death of his third wife, Mae, provided in summary: (1) a devise of a lot to his daughter Ruth Carlton, (2) a devise of a life estate to his wife of a lot on which his home was located and another lot, with remainder *to the home to his daughter Ruby Ingle* and the lot to his son Calvin C. Mason, (3) a life estate in what apparently is a rental house to his wife, with remainder to his son Clyde Mason, (4) a devise to his wife, Mae, of the rest and residue of his property for life with the remainder to his children Ruby Ingle, Calvin Charles Mason, Ruth Carlton and Clyde Mason, share and share alike. He appointed his daughter Ruth Carlton executrix of the will.

Roma, who could not read or write, died at age 91 on January 2, 1983; his statutory heirs at law were his daughters, Ruth Carlton, Ruby Ingle, Alma Spooner and Frances Crymes and his sons, Charles Calvin Mason and Clyde Mason.

Thus, it is observed, Ruby Ingle stands to receive much more under the will than under the Statutes of Descent and Distribution.

We summarize the pertinent testimony.

First, it is admitted by all parties that Roma did execute the purported will with all of the formalities of law and further that the will was not found in his possession at the time of his death. After Roma's death, Ruth Carlton obtained a photocopy of the executed will from the lawyer who prepared it and the proponents seek to prove the will in due form of law.

Ruby Ingle testified that (1) in April of 1976, Mae Mason, the third and last wife of Roma Mason, before her death in November 1977, called Ruby Ingle to come to her home, (2) upon Ruby's arrival, and in Roma's absence, Mae took the will from "a little tin box," (3) Mae could not read or write, (4) she asked Ruby Ingle to "read this will," (5) Ruby read her the will and discovered that her sister, Ruth, was made the executrix, and (6) "it made me angry and I tore it up."

Ruby Ingle then identified the photocopy of the will as being the same as the one she tore up. She then testified as follows:

Q. After you did that, did you ever have any discussion prior to his death with your father about it?
A. No, sir, I did not.
Q. Did you have any discussion with any one [sic] in this world about it?
A. No.

Ruby then testified that after her father's death, some five years later, her sister Ruth, who subsequently died, after obtaining the will from the lawyer, asked her, Ruby Ingle, to accompany her, Ruth, to the judge of probate's office. There Ruby Ingle signed an affidavit, the effect of which is given in the above testimony.

Appellant, Alma Spooner, testified that her father, Roma, told her that he had made a will but had destroyed it and further that he had had Ruby tear the will up and that he himself burned the scraps. Alma also testified that Roma told her that Ruth had made the will and she was not supposed to do that, that attorney Richard Tapp, the scrivener, and Ruth drew the will and further that her father told her that he did not want a will.

With these facts before us, we review the applicable law.

Section 21-7-640, Code of Laws of South Carolina (1976) sets forth the procedure for proving a will in due form of law. In substance it provides that every person who would have been entitled to distribution of the estate if the deceased had died intestate shall be summoned to answer the petition of the person seeking to prove the will, and upon trial, the judge shall hear the testimony of the witnesses for and against the confirmation of the will upon all matters touching upon its legality or formal execution.

Section 21-7-210, Code of Laws of South Carolina (1976) provides:

Section 21-7-210, *Revocation of wills generally.*

No wills or testament in writing of any real or personal property or any clause thereof shall be revocable but by some other will or codicil in writing, or other writing

declaring the same, attested and subscribed by three witnesses as required by Section 21-7-50, or by destroying or obliterating the same by the testator himself, *or some other person in his presence, and by his direction and consent.* [Emphasis ours.]

Despite the above, under the law of South Carolina, when a testator takes possession of his will, and when that will cannot be found at the time of his death, a presumption arises that the testator destroyed his will *animo revocandi*, which simply means he destroyed the will with the intent to revoke it. *Davis v. Davis*, 214 S. C. 247, 255, 52 S. E. (2d) 192, 195 (1949). Once this presumption arises, the proponent of the missing will has the *burden of rebutting* it by showing either that: the will existed at the time of the testator's death, was lost after his death, or was destroyed by a third party without the testator's knowledge or consent. *Lowell v. Fickling*, 207 S. C. 442, 447, 36 S. E. (2d) 293, 295 (1945).

With respect to this burden of proof, stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud and the courts should proceed with extreme care in the matter of proving a lost will and should be thoroughly satisfied that no fraud is being attempted. To establish an alleged destruction of a will so as to entitle it to probate, there must be sufficient evidence of its destruction which, under the circumstances, would defeat an inference of cancellation by the testator. Accordingly, one who seeks to establish as a valid will one that is destroyed and unrevoked must produce evidence that is clear and convincing. 95 C. J. S. *Wills* Section 419 (1976). This cogent rule is especially applicable in a case such as the one before us where the proponent of the will (Ruby Ingle) receives more under the will than under the intestate laws.

By preface to discussion of the dead Man's Statute, we note that this statute is directed not to the admissibility of evidence but to the *competency* of the witness; the testimony, otherwise admissible, of non-interested persons is inadmissible perforce of Section 19-11-10, Code of Laws of South Carolina (1976) which removes the common law disability of a party to testify in his own behalf.

With that in view, we review the Dead Man's Statute.

The Dead Man's Statute, Section 19-11-20, Code of Laws of South Carolina (1976) in substance provides that a witness may not testify (will not be a competent witness) should the witness be in either of four designated classes.[2] Both Ruby Ingle and Alma Spooner are within the classes of witnesses to which the statute pertains. *See Suttles v. Wood*, 280 S. C. 272, 312 S. E (2d) 574 (Ct. App. 1984).

Then the statute provides that if a witness within that class testifies, the competency of such a witness must be further subjected to three tests, viz., (a) is the testimony in regard to any *communication or transaction between the witnesses and the deceased* (b) is the testimony offered against a party prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of the deceased person and (c) *does the testimony potentially affect the present or previous interest of the witness.*

The second part of the Dead man's Statute creates an exception or waiver and is as follows:

> But when such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf in regard to such transaction or communication or when testimony of such deceased or insane person or lunatic in regard to such transaction or communication, *however the same may have been perpetuated or made competent,* shall be given in evidence on the trial or hearing in behalf of such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committee, then all other persons not otherwise rendered incompetent shall be made competent witnesses in relation to such transaction or communication on said trial or hearing. [Emphasis ours.]

The word "however," i.e., by whatever means, whether by subtle legerdemain or direct testimony, is significant. By the

---

[2] The four classes are (1) a party to the action, (2) a person having an interest which may be affected by the trial's outcome, (3) a person who previously had an interest which may be affected by the trial, and (4) an assignor of the thing in controversy. *Long v. Conroy*, 246 S. C. 225, 143 S. E. (2d) 459 (1965).

use of the words "testimony ... however the same may have been perpetuated or made competent, ... shall be made competent witnesses," the legislature clearly intended to proscribe circumvention and fraud.

The very essence of this case is whether Roma Mason either destroyed the will himself or directed that it be destroyed in his presence. When a will is not found upon the death of the testator, one cannot imagine a more suspicious set of circumstances than a proponent's (of the proof of the will) testifying that he or she destroyed the will in the absence of the testator, thus circumventing the mandate of the General Assembly by Section 21-7-210 and the accompanying interpretation thereof requiring that the proponent of the will affirmatively show the absence of fraud.

> The law and the exception to the privilege to testify was intended to prevent an undue advantage on the part of the living over the dead, who cannot confront the survivor, or give his version of the affair or expose the omission, mistake or perhaps falsehoods of such survivor. *The temptation to falsehood and concealment in such cases is considered too great to allow the surviving party to testify in his own behalf.* Any other view of this subject, I think, would place in great peril the estates of the dead, and would in fact make them an easy prey for the dishonest and the unscrupulous. [Emphasis ours.]

*Owens v. Owens*, 14 W. Va. 88, 95 (1878).

Stated differently, the Dead Man's Statute aims to prevent testimony as to communications and transactions with persons deceased and the cases therein mentioned on the grounds that it is against public policy to allow witnesses to testify as to matters, of which, if such testimony is untrue, it cannot be contradicted by the deceased. *Trimmier v. Thompson*, 41 S. C. 125, 19 S. E. 291 (1894).

The matter which Ruby Ingle testified to related to the manner in which the will was allegedly destroyed, a matter which Roma Mason cannot testify to because he is dead.

While, admittedly, Mrs. Ingle's testimony that she destroyed the will is, on the surface and at first blush, neither a communication nor a transaction between the witness and the deceased, this highly suspicious testimony might well be

subtle legerdemain to circumvent Section 21-7-210, *supra*, relating to the revocation of wills. The effect of Mrs. Ingle's testimony is clearly that the will was neither destroyed in Roma's presence nor at his direction. This effect is a denial that Roma Mason directed her to destroy the will in his presence. It is testimony amounting to a denial of the material issue of the case.

While we cannot find a case exactly on point, it is generally held that the Dead Man's Statute precludes a witness from testifying that he was not indebted to a person since deceased. *See*, 8 A.L.R. (2d) 1096. In the case of *Daniel v. O'Kelly*, 227 Ga. 282, 180 S. E. (2d) 707 (1971), it was held that testimony that the deceased positively did not make a contract is as much with reference to a statutory transaction as testimony that she did so contract. The effect of these authorities is simply that testimony that a testator did not do a certain act is equivalent, under the Dead Man's Statute, to testimony that he did do that act.

The General Assembly, by using the words "however ... made competent" by clear inference recognized that camouflaged testimony might be, in reality, fraudulent testimony of a transaction with a deceased person. It naturally follows that self-serving testimony about the destruction of the will, whether the testimony is negative or positive as to the presence and direction of the testator, is proscribed by the Dead Man's Statute. We therefore hold that Ruby Ingle's testimony pertains to a transaction or communication with the deceased. The testimony is also self-serving and therefore proscribed by the Dead Man's Statute. *See* 22 S.C.L.R. 558 (1970) and *Long v. Conroy*, 246 S. C. 225, 143 S. E. (2d) 459 (1965) and *Suttles v. Wood*, 280 S. E. 272, 312 S. E. (2d) 574 (Ct. App. 1984). And we so hold.

For the reasons stated, the appealed order is reversed and the case is remanded for a trial *de novo*.

Reversed and remanded.

CURETON and GOOLSBY, JJ., concur.