482 S.E.2d 784

**Mary Lou GOLINI, Appellant,**

v.

**Melvin R. BOLTON, Personal Representative of the Estate of Willie Mae Arant, Respondent.**

**In re The ESTATE of Willie Mae ARANT.**

**No. 2630.**

Court of Appeals of South Carolina.

Submitted Dec. 3, 1996.

Decided Feb. 3, 1997.

334

336

Paul W. Owen, Jr., of Lourie & Safran, Columbia, for
appellant.

Randall E. McGee, of Felder & Prickett, St. Matthews, for respondent.

HOWARD, Judge:

Mary Lou Golini appeals the circuit court's affirmance of a probate court order admitting a copy of Willie Mae Arant's last will to formal probate and appointing Melvin R. Bolton personal representative under the will. Because we find evidence which reasonably supports the factual findings of the probate court, we affirm.[1]

## FACTS

Willie Mae Arant executed her Last Will and Testament on August 5, 1992. Arant executed her will, which had been drafted by an attorney, in her home with two witnesses present. The original will could not be found after Arant's death, so a copy of the will was filed in Calhoun County Probate Court. The probate court issued an order of informal probate and appointed Melvin R. Bolton personal representative under the will. The will left the bulk of the estate to Bolton, Arant's nephew, and Kent Sutcliffe, Arant's grandson. Mary Lou Golini, Arant's only surviving daughter, filed suit challenging the probate of the will on the ground that because the original will could not be found, it had been destroyed *animo revocandi* (with the intent to revoke).

The probate court found Arant's will had not been revoked because it was returned to her attorney's office after it was executed and it was lost some time after that. Furthermore, the probate court found Arant thought she had the original in her possession, but did not. The probate court found that Arant always indicated where her will was located and copies of her will were found in those locations after her death. The probate court admitted the will to formal probate and appointed and qualified Bolton as personal representative of Arant's estate.

Golini appealed to circuit court. The circuit court affirmed the probate court and stated the preponderance of evidence

---

1. Because oral argument will not aid the court in resolving the issues on appeal, we decide the case without oral argument, pursuant to Rule 215, SCACR.

showed Arant was not in possession of her will after its execution. The circuit court based this conclusion on the fact that before the factual presumption of *animo revocandi* arises in a lost will situation, it must be proven the testator had possession of the will.

## SCOPE OF REVIEW

Appeal from the probate court is governed by the provisions of the South Carolina Probate Code. *See Howard v. Mutz*, 315 S.C. 356, 434 S.E.2d 254 (1993). The probate code provides that a final order or decree of the probate court may be appealed to the circuit court. S.C.Code Ann. § 62-1-308(a) (Supp.1996). The circuit court must hear and determine the appeal "according to the rules of law." S.C.Code Ann. § 62-1-308(d) (1987). This phrase means according to the rules governing appeals. *Howard*, 315 S.C. at 360, 434 S.E.2d at 257. On appeal from the final order of the probate court, the circuit court should apply the same standard of review that this court would apply on appeal. *Id.*

The determination of the standard of review by an appellate court of matters originating in the probate court is controlled by whether the cause of action is at law or in equity. *Dean v. Kilgore*, 313 S.C. 257, 437 S.E.2d 154 (Ct.App.1993). To make this determination, the appellate court must look to the essential character of the cause of action alleged by the petitioners in the court below. *Id.* 437 S.E.2d at 155. If the essential nature of the cause of action is legal, the action to be taken by the circuit court is controlled by its determination of whether or not there is any evidence to support the factual findings of the court below. *Id.*

An appeal from probate court to circuit court as to the validity of a will is a case at law. *Johnson v. Johnson*, 235 S.C. 542, 112 S.E.2d 647 (1960); *Campbell v. Christian*, 235 S.C. 102, 110 S.E.2d 1 (1959). An action to contest a will is at law. *Martin v. Skinner*, 286 S.C. 527, 335 S.E.2d 252 (Ct.App. 1985). If the proceeding in the probate court is in the nature of an action at law, the circuit court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them. *Howard*, 315

S.C. at 361, 434 S.E.2d at 257; *see Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

 Although the circuit court found the matter equitable in nature and that it was free to find facts in accordance with its view of the preponderance of the evidence, it affirmed the probate court's order. On appeal, this court will review the record to see if there is any evidence to reasonably support the factual findings of the probate court. *See Howard,* 315 S.C. at 361–62, 434 S.E.2d at 257–58 (reversing the circuit court because there was some evidence to support the probate court's findings in an action at law).

## LAW/ANALYSIS

All parties agree Arant properly executed her will. The dispute arises over what happened to the original will after its execution. Golini claims the evidence proves Arant was the last person to have possession of her will because the will was executed in Arant's home and the witnesses to the will testified they left the will with Arant after it was executed. Bolton claims, and the lower courts agreed, the evidence tended to show the last verifiable location of the will was in Arant's attorney's office, and therefore, the presumption of *animo revocandi* did not apply.

 A formal testacy proceeding is litigation to determine whether a decedent left a valid will. S.C.Code Ann. § 62–3–401 (1987). This section governs the procedure for the proof of lost or destroyed wills as well as wills in existence. *See Davis v. Davis,* 214 S.C. 247, 52 S.E.2d 192 (1949) (referring to § 62–3–401's predecessor).

 "A will or any part thereof is revoked ... by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction." S.C.Code Ann. § 62–2–506 (1987). Revocation by an act or by a subsequent instrument must be accompanied by an intention to revoke, and, without the intention, revocation does not take place. *Johnson v. Brailsford,* 11 S.C.L. 272 (1820) (mutilated will requires evidence that testator intended to destroy it).

340

■ Generally, contestants of a will have the burden of establishing revocation. S.C.Code Ann. § 62–3–407 (Supp. 1996). However, when the testator takes possession of his will and it cannot be found at his death, the law presumes that the testator destroyed the will *animo revocandi. Lowe v. Fickling,* 207 S.C. 442, 36 S.E.2d 293 (1945); *see McLaurin v. Newton,* 183 S.C. 379, 191 S.E. 59 (1937) (holding lost codicil did not destroy or revoke the testator's will during the testator's life even though the codicil was last seen in the possession of the testator); *Bauskett v. Keitt,* 22 S.C. 187 (1885) (where a will is traced to the possession of testator, but cannot be found after his death, there arises a presumption of destruction by him; this, however, is a presumption of fact, rebuttable by evidence); *Durant v. Ashmore,* 2 Rich. 184, 31 S.C.L.Rev. 184 (1845) (presumption of *animo revocandi* is one of fact and requires the testator have possession of his will before it was lost). *Cf. Davis,* 214 S.C. at 247, 52 S.E.2d at 192 (presumption of *animo revocandi* does not apply when will destroyed by accidental means).

■ "This is merely a presumption of fact and may be rebutted by showing by the evidence that the will existed at the time of his death, was lost subsequent thereto, or had been destroyed by another without authority to do so." *Lowe,* 207 S.C. at 447, 36 S.E.2d at 295.

■ If the testator was known to have her last will in her possession or had ready access to it, and it cannot be found on her death, it is presumed, rebuttably, that she destroyed it and thereby revoked it. *Mason v. Mason,* 289 S.C. 273, 346 S.E.2d 28 (Ct.App.1986). "Once this presumption arises, the proponent of the missing will has the *burden of rebutting* it by showing either that: the will existed at the time of the testator's death, was lost after his death, or was destroyed by a third party without the testator's knowledge or consent." *Id.,* 289 S.C. at 277, 346 S.E.2d at 32. Furthermore, the evidence to rebut the presumption must be clear and convincing. *Id.* The evidence to support or rebut the presumption may include the testator's declaration. *Id.* If the will is shown not to have been revoked, it may be admitted to probate in formal proceedings if its contents can be proved. *Id.*

From a review of the record, this court finds evidence which reasonably supports the factual findings of the probate court including the fact Arant was not in possession of her will. Both witnesses to the will's execution testified they were the only ones present when Arant signed her will and Arant had possession of the will when they left her home. Arant told the witnesses to the will she intended to have the will taken to her attorney's office.

Another witness, Thomas Arant (Thomas), testified he frequently carried papers to and from Arant's attorney's office for Arant. Thomas testified he took papers related to Arant's will back and forth, but he could not be sure he carried the final, executed will to the attorney's office.

Attorney Thomas Culclasure drafted two wills for Arant. He prepared the first will, which also excluded Golini, in 1988. He prepared the second will in 1992 after Arant's daughter, Sally, died. The second will Culclasure drafted was picked up from his office. After it was executed, Culclasure testified the will was returned to his office. However, Culclasure said he "can only assume that the original made it back" to his office because he had a copy of the executed will. Culclasure stated "I did not give her the original Will, nor did I receive the original Will back, personally."

Culclasure maintained a card file for all wills he drafted in his practice. The card for Arant states that Arant signed her will August 5, 1992, and that "Mrs. Arant has the original." This handwritten notation was written by Culclasure's secretary. Culclasure's practice was to put any original wills he kept in his lock-box at the bank. He searched the lock-box and all his office files but was unable to locate Arant's original will. Culclasure did not know who may have picked up the will from his office but he thought the will had been given to someone.

Kent Sutcliffe, Arant's grandson, testified Arant kept her important papers in a little chest and that she kept a sealed envelope in there which he thought contained her will. Sutcliffe's stepmother, Beth, testified Arant was a very organized person and kept her important papers in a little desk in her dining room. Melvin Bolton testified Arant told him her will was located "one by the door and one in the dining room."

Bolton saw sealed envelopes in these locations but did not see the contents of the envelopes until after Arant had died. After Arant's death, Bolton retrieved the two sealed envelopes from the two locations and took them to the probate court judge to have them opened. Only then did he discover the envelopes contained copies of Arant's will but neither contained the original. Bolton also checked Arant's personal lock-box at the bank but the original will was not there.

"Proof that a testator, whose will cannot be found after his death, entertained a kindly or loving feeling toward the beneficiaries under the will carries weight and tends toward the conclusion of nonrevocation of the will by the testator." 79 Am.Jur.2d *Wills* § 628 at 723 (1975); *see Reeves v. Booth,* 9 S.C.L. 334, 334–35 (1818) (allowing the next best evidence, the testator's deathbed declarations, when the original will has been lost). Numerous witnesses testified as to the love and affection that existed between Arant and Bolton and Bolton's daily visits with Arant as well as his cooking her meals and running her errands. Even Golini testified Bolton was "like a son" to Arant. Before she died, Arant gave Bolton her Power of Attorney.

Numerous witnesses also testified that Arant and Golini did not get along and that Arant stated on numerous occasions she intended to leave Golini out of her will. Golini testified she resented her mother for divorcing her father and that she and her mother never got along. Golini visited her mother once in the hospital and while there asked about her mother's jewelry to make sure it was in a safe place. Golini stated Arant often told her she was going to leave Golini out of her will or just leave her a dollar.

In a law case tried without a jury, questions regarding the credibility and the weight of evidence are exclusively for the trial judge. *See Wayne Smith Constr. Co. v. Wolman, Duberstein, & Thompson,* 294 S.C. 140, 363 S.E.2d 115 (Ct. App.1987).

Golini asserts the circuit court erred by applying the preponderance of evidence standard rather than the clear and convincing standard required by *Mason.* Bolton argues that because Arant did not have possession of her will, *animo*

*revocandi* was never established and its stricter standard of proof is not applicable. Because possession is a requirement for the presumption of *animo revocandi,* and we find evidence in the record which supports the finding that Arant did not have possession of her will, the clear and convincing standard is not required.

*Mason* stated "stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud and the courts should proceed with extreme care in the matter of proving a lost will and should be thoroughly satisfied that no fraud is being attempted." *Mason,* 289 S.C. at 277, 346 S.E.2d at 32. "It has been said that the evidence to overcome the presumption that a lost will was destroyed by the testator animo revocandi must be clear, satisfactory, and convincing, or the like." 79 Am.Jur.2d *Wills* § 628 at 721. "The presumption is held to be entirely overcome and rebutted, however, where it appears that upon the execution of the will it was deposited by the testator with a custodian, and that the testator did not thereafter have it in his possession or have access to it." *Id.* at 722.

Lastly, Golini claims it was error for the probate court to rely "upon foreign law to support its decision." Bolton claims that the probate court cited case law from other jurisdictions because South Carolina has no cases directly on point. We find no error. In its order, the probate court cited an A.L.R. article and three cases from other states for the proposition proof of unfriendly relations between a decedent and the party benefitting if a will is revoked can prove the testator's intention of nonrevocation. Our supreme court will look to other states for persuasive authority where there are no South Carolina opinions on point. *See Williams v. Morris,* 320 S.C. 196, 464 S.E.2d 97 (1995).

Accordingly, the lower court's order is

**AFFIRMED.**

HOWELL, C.J., and HUFF, J., concur.