509 S.E.2d 483

**Brigitte SILVA, Appellant,**

v.

**Wendy SILVA, Respondent.**

No. 2916.

Court of Appeals of South Carolina.

Heard Oct. 7, 1998.

Decided Dec. 14, 1998.

John P. Ford, Anne M. Bell and Terrell T. Horne, all of Bryan, Bahnmuller, Goldman & McElveen, of Sumter, for appellant.

Douglas N. Truslow, of Columbia, for respondent.

STILWELL, Judge:

Appellant Brigitte Silva, Major James A. Silva's second wife, brought this action against respondent Wendy Silva, Major Silva's third wife and widow, seeking to impose a constructive trust on the annuities paid to Wendy pursuant to Major Silva's participation in the federal Survivor Benefit Plan (SBP). After a non-jury trial, the trial court refused to impose the constructive trust. We affirm.

## FACTS

Major Silva (Husband) and Brigitte married in 1972 and divorced in 1985. In a settlement agreement merged into the divorce decree, Husband agreed to designate Brigitte as the beneficiary of his military Survivor Benefit Plan. The decree provided further that Husband would complete all necessary paperwork and provide documentation that he had done so. Although sometime during their marriage Husband had named Brigitte as his spouse beneficiary, he failed to comply with the court's order and execute the necessary forms to ensure that Brigitte, as a *former* spouse, would receive the benefits.

In 1987 Husband married Wendy. In December 1992 Husband died. Because Husband failed to complete the paperwork that would allow Brigitte as his *former* spouse to collect the SBP annuity, Wendy, as Husband's widow, began receiving the annuity pursuant to the default provisions of the SBP.

Brigitte maintains that Husband repeatedly assured her that he had taken the steps necessary to name her as the beneficiary. She took no legal action, however, to require Husband to provide documentation or compel his compliance until 1992, when she filed a contempt action in family court. After discovering that Husband was suffering from cancer, she abandoned this action and it was later dismissed.

In 1994 Brigitte filed suit in circuit court seeking to (1) impose a constructive trust over the SBP payments being received by Wendy, (2) order an accounting of all SBP proceeds, and (3) disgorge all payments already received by Wendy. At trial, Brigitte's attorney conceded that Husband assumed that Brigitte would receive the benefits because Brigitte was still named as the spouse beneficiary. The attorney also stated Brigitte was not alleging Husband was guilty of fraud, deceit, or malice by his inaction. The trial court refused the requested relief.

## LAW/ANALYSIS

The SBP was created by Congress in 1972. The system was designed to provide an annuity payable to a retired service member's surviving spouse or child upon the service member's death. 10 U.S.C. §§ 1447–1455 (1994 & Supp.1996). Over the years Congress amended the plan numerous times. A 1982 amendment expanded SBP coverage, allowing a service member the right to designate a former spouse as the beneficiary. *See* 10 U.S.C. § 1448(b)(2) (1994 & Supp.1996).

The following year Congress clarified the 1982 amendment and provided a retired participant the right to name a former spouse as the beneficiary if at the time of retirement the service member had designated the spouse as the beneficiary and the couple subsequently divorced. To do so, however, the service member was required to notify the appropriate government official in writing within one year following the date of the decree of divorce, dissolution, or annulment. *See* 10 U.S.C. § 1448(b)(3) (1994 & Supp.1996).

In 1984 Congress once again amended the SBP, establishing a method for a former spouse to be "deemed" the beneficiary if the service member failed to make the former spouse election as required by a court approved, ratified, or incorporated agreement. The 1984 amendment allowed the former spouse to request this "deemed" election by writing to the appropriate government official and including a copy of the court order. A former spouse is allowed only one year from the date of the court order or filing to do so. *See* 10 U.S.C. § 1450(f)(3) (1994 & Supp.1996). Congress has further provided that the SBP annuity "is not assignable or subject to

execution, levy, attachment, garnishment, or other legal process." 10 U.S.C. § 1450(i) (Supp.1996).

No South Carolina case has addressed this precise question. When there is no case on point in South Carolina, our courts may look to other states to determine if the issue has been decided and if the decision is persuasive authority. *See Williams v. Morris,* 320 S.C. 196, 464 S.E.2d 97 (1995) (cited in *Golini v. Bolton,* 326 S.C. 333, 482 S.E.2d 784 (Ct.App. 1997)).

The Georgia Court of Appeals recently addressed a situation similar, if not identical, to the present case. In *King v. King,* 225 Ga.App. 298, 483 S.E.2d 379 (Ga.Ct.App.1997), a former spouse brought an action against a surviving spouse, asking the court to impose a constructive trust over the SBP annuity benefits being paid to the surviving spouse. Although the divorce decree incorporated a written agreement whereby Mr. King was to provide his former spouse with SBP coverage, he failed to file the necessary paperwork. Nor did his former spouse take the necessary steps to insure that she was deemed the beneficiary. Pursuant to provisions of the SBP, the Air Force began paying the annuity to the surviving spouse.

The court of appeals reversed the trial court's imposition of a constructive trust, concluding that even though Congress had created a statutory scheme to allow "federal and state courts to apply both community property and equitable distribution principles to military retirement pay," Congress had not granted the "same power to the states with respect to the award of annuity benefits for former spouses under the SBP." *Id.* at 382–83. Rather, Congress had specifically outlined how a former spouse awarded SBP benefits under a divorce decree could become entitled to the annuity.

The Georgia court further found that the rights asserted under the divorce decree by the former spouse were precluded by the provisions of the SBP that awarded the annuity to the surviving spouse and, therefore, "the consequences of enforcing the conflicting state law principles sufficiently injures the objectives of the SBP so that federal law preempts the authority of state law." *Id.* at 383.

We find the reasoning of the Georgia court persuasive and conclude that the provisions of the SBP make clear Congress's intention to occupy the field under these particular circumstances. *Cf. Gregory v. Gregory,* 292 S.C. 587, 358 S.E.2d 144 (Ct.App.1987) (ruling that state courts have no authority to preempt a spouse's C.I.A. annuity rights as vested by federal statute); *Thibodeaux v. Thibodeaux,* 712 So.2d 1024, 1028 (La.Ct.App.1998) (concluding that the "[a]pplication of Louisiana's community property laws would interfere with the uniform federal system of distribution which Congress has established through the [Old Age Survivors and Disability Insurance] benefits scheme of the Social Security Act."); *Foreness v. Hexamer,* 971 S.W.2d 525 (Tex.App.1997) (concluding that federal garnishment regulation preempted state's child support garnishment order), *cert. denied,* —— U.S. ——, 119 S.Ct. 240, 142 L.Ed.2d 197 (1998).

Because we conclude that neither the trial court nor this court has the authority to preempt the SBP provisions, we

**AFFIRM.**

CURETON and CONNOR, JJ., concur.