# IN THE MATTER OF THE ESTATE OF
# EUSTACE RECARDO RICHARDS, Deceased

Probate No. 69/2002

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

August 15, 2003

CAROLYN HERMON-PERCELL, ESQ., Percell & Hermon-Pecell, P.C., St. Thomas, Virgin Islands, *Attorney for the Estate*

SWAN, *Judge*

## MEMORANDUM OPINION

### (August 15, 2003)

Before the Court is Petitioner's motion to declare the original of Eustace Recardo Richards' Last Will and Testament lost and to substitute a copy of the same will to probate decedent's estate. The Court will grant Petitioner's motion.

## FACTS

Peggy Smith ("Petitioner") is the niece of Eustace Recardo Richards ("decedent"). During his lifetime, decedent never married and never had a child. He died on June 17, 2001.

On March 17th, 1999, decedent requested an attorney in the office of the Legal Services of the Virgin Islands ("Legal Services") to prepare his Last Will and Testament ("Will"). Decedent informed the attorney of his intention to leave his entire estate to Petitioner. The will was prepared, and Decedent executed the Will in the presence of two attesting witnesses who were employees of Legal Services. The attorney gave the original Will to decedent and retained an exact copy of the same will in Legal Services' files. After decedent's death, all efforts to locate the original Will have been unavailing and unsuccessful, including an exhaustive search of decedent's home, personal belongings and paraphernalia. Only the copy of the will retained by Legal Services has been located.

## DISCUSSION

 When a will is known to have been executed by a testator, and cannot be located after the death of the testator, there is a rebuttable presumption that the testator destroyed the will with the intent to revoke it. *In re Estate of Lucia A. Mammana*, 388 Pa. Super. 12, 564 A.2d 978 (1989). In *Duvergee v. Sprauve*, 413 F.2d 120, 7 V.I. 248 (3d Cir. 1969), the Third Circuit Court of Appeals recognized this presumption. *Duvergee* states:

> It is a well settled principle that if a will or codicil known to have been in existence during the testator's lifetime, and in his custody ...

cannot be found at his death, a presumption arises that the will was destroyed by the testator in his lifetime with the intention of revoking it, and in the absence of rebutting evidence, this presumption is sufficient to justify a finding that the will was revoked.

*Duvergee*, 413 F.2d at 123. However, if one can establish that a decedent neither revoked nor destroyed the will, the existence of that fact can rebut the presumption of the missing will being revoked or destroyed. Specifically, proof that a will was not revoked or destroyed can be presented through circumstantial or direct evidence, including testimony of the decedent's declarations about the will, and decedent's intentions concerning the disposition of decedent's property. Importantly, if the decedent's declarations are consistent with the terms of the lost will, that fact is evidence that the decedent did not revoke his will. John P. Ludington, Annotation, *Sufficiency of Evidence That Will was not Accessible to Testator for Destruction, in Proceeding to Establish Lost Will*, 86 A.L.R.3d 980 § 2(b) (1978). Similarly, in *Golini v. Bolton*, 326 S.C. 333, 482 S.E.2d 784 (1997), the Court asserts that evidence to support or rebut a presumption that a will has been destroyed and revoked may include the testator's declaration. The Court also opined that proof that a testator, whose will cannot be found after his death, had entertained kindly or loving feelings toward the beneficiaries under the will carries weight and tends toward a conclusion of non-revocation of the will by the testator. *See also In re Estate of Strong*, 194 Ill. App. 3d 219, 141 Ill. Dec. 155, 550 N.E. 2d 1201 (1990). The Court's pronouncement in the case of *In re Estate of King*, 149 N.H. 226, 817 A.2d 297 (2003), is illuminating. In that case, the Court asserts that evidence that a deceased maintained the same relationship to the beneficiaries as he had at the time his will was executed, and that nothing occurred which would be likely to change his mind with regard to the legatees, is evidence that tends to negate revocation and tends towards non-revocation of the will.

On March 18, 2003, a hearing was held to determine whether the Petitioner can overcome the presumption that the original Will was destroyed or revoked by decedent. Several witnesses testified in support of the contention that the will was lost or misplaced. Additionally, the

testimony informed that decedent's intentions are accurately expressed in the copy of the Will offered for probate.

The decedent's brother, Alva Richards, testified that decedent had constantly and unfailingly informed family members and friends of his intention to leave his entire estate to Petitioner. Mr. Richards further testified that during decedent's last illness and hospitalization, and after he left the hospital, decedent resided with Petitioner at her home until his demise. In decedent's last years, Petitioner became his sole caretaker. Mr. Richards asserted that the provisions in decedent's will are consistent and congruous with decedent's representations to him, concerning decedent leaving his entire estate to Petitioner. Another witness, Mr. Benedict Registe, who was decedent's long time associate and former co-worker, testified and reaffirmed that a few weeks before decedent's demise, decedent told Mr. Registe that he wanted Petitioner to have everything he owned, because she had looked after him in his advanced years.

Additional verification of decedent's intention to leave his entire estate to Petitioner is manifested in a December 4, 2002 letter from Zahida Ishmael, the manager of the St. John Branch of Scotiabank. The letter informs that during the decedent's lifetime, he caused the Petitioner's name to be added on the passbook for his savings account with that bank with the notation, "In trust for Peggy Smith".

From an affidavit and testimony of an attorney currently employed at Legal Services, the Court concludes that the decedent never requested of Legal Services' legal staff that a subsequent will be prepared for him. If decedent had desired to revoke his Will by a superceding will, he would have returned to Legal Services to have another will prepared, or to have the copy of the will retained by Legal Services destroyed. *See King*, at 297. Importantly, decedent never informed Legal Services, his brother, other family members, his friends or his associates that he had revoked or had destroyed or intended to revoke or destroy his original Will. Likewise, the record is devoid of any evidence that decedent destroyed the original copy of his Will, or that he had expressed in any writing an intention to revoke or destroyed his will. In *Matter of Modde's Estate*, 323 N.W. 2d 895 (S.D. 1982), the Court opined that the absence of any statement by decedent of an intent or desire to revoke or change his will is a significant factor on the issue of the existence of the will, which could not be found at the time of testator's death.

Mr. Richards testified regarding decedent's intention to leave his entire estate to Petitioner, with whom decedent had a close family relationship. His testimony was crucial, because Mr. Richards, decedent's brother, would inherit a portion of decedent's estate, if the Court finds that decedent destroyed or revoked his Will and died intestate. 15 V.I. CODE ANN. § 84(6). The Court found Mr. Richards to be credible, because his testimony was in large measure against his interest. FED. R. EVID. 804(b)(3). Additionally, decedent told his former co-worker and longtime associate of his intention to leave his entire estate to Petitioner. It is significant that decedent informed two persons, who he trusted and with whom he had close relationships, of his intention to leave his entire estate to Petitioner. This fact corroborates decedent's verbal pronouncements and representations concerning who will inherit his estate. Lastly, it is noteworthy that decedent had no spouse or child or anyone for whom he would have had a legal, social or moral obligation to support. The fact that Petitioner is decedent's niece and blood relative and a person with whom decedent had a long, close relationship cannot be ignored. Rather, the above facts overcome the presumption that decedent revoked or destroyed his original Will. Petitioner is the sole beneficiary under the decedent's will.

## CONCLUSION

■■ The Court holds that considering decedent's close family relationship with Petitioner, the decedent's declarations to his brother and to a close associate of decedent's intention to leave his estate to Petitioner, the Petitioner being decedent's sole caretaker in decedent's last years, and decedent having caused Petitioner's name to be placed on the passbook to his savings account, there is sufficient evidence to rebut the presumption that decedent revoked or destroyed his original Will.

Moreover, there has been no countervailing credible evidence to suggest or intimate that decedent had revoked the Will. Also, there is no evidence or declaration by decedent that he intended to revoke the Will. The Court further holds that when the original of a decedent's will cannot be found after decedent's death, the presumption that the will has been revoked or destroyed can be overcome by proof that the decedent and the beneficiary under the will were blood relatives who had a close, family relationship, that decedent had expressed during his lifetime his intention to leave his estate to the beneficiary named in the will, and that

there is no credible evidence that the decedent ever revoked or destroyed or expressed an intention to revoke or destroy his will. Therefore, the Court will admit to probate the copy of decedent's Will retained by Legal Services.