## IN THE MATTER OF THE ESTATE OF MARI (MARY) LOUISE LECUYER, Deceased

Probate No. ST-05-PB-09

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 12, 2008

157

RONALD W. BELFON, ESQ., St. Thomas, USVI.

PAULA D. NORKAITIS, ESQ., Tom Bolt Associates, PC, St. Thomas, USVI.

THOMAS, *Judge*

## MEMORANDUM OPINION

### (December 12, 2008)

This Matter came on for a hearing on October 17, 2005, on the Declaration of Contest filed by Kristin Anne Morse ("Contestant"), pursuant to Rule 193 of the Rules of the Superior Court — Will [C]ontests. The Contestant, while not present, was represented by Paula D. Norkaitis, Esq. of Tom Bolt & Associates, P.C., and the estate of Mari (Mary) Louise LeCuyer ("Testatrix"), as well as the Petitioner, Francis J. LeCuyer ("Petitioner"), was represented by Ronald W. Belfon, Esq.

## FACTS

The Contestant is the adopted daughter of the Testatrix. The Petitioner is the husband of the Testatrix and is named as the Executor of the estate in a document purported to be the Last Will and Testament of the Testatrix ("2004 Will").

On January 24, 2005, the Petitioner filed a Petition for Admission of Will to Probate and for Letters Testamentary along with supporting documents, including Affidavits of Discovery, a Declaration of Notary Public, a Death Certificate, and three (3) Affidavits of Attesting Witnesses.

The Contestant filed a Declaration of Will Contest on August 5, 2005, and a Declaration of Will Contest Supplement on June 8, 2006, challenging the 2004 Will on the grounds that (1) the 2004 Will was altered and signed three months after the death of the Testatrix; (2) the Petitioner has not overcome the presumption that the Testatrix destroyed the 2004 Will for the reason that he is unable to produce the original 2004 Will;[1] and (3) the Petitioner has not adequately proven that the Original 2004 Will was delivered to him by the Testatrix.

---

[1] Because the first two pages of the document submitted to the Court as the original of the 2004 Will appear to be copies, the Court submitted the document to the U.S. Department of Homeland Security's Forensic Document Laboratory for a determination as to whether those first two pages were originals and whether the driver's license numbers and the date "December 20" were authored by the same person. In response, the Laboratory informed the Court that they were unable to answer the Court's questions conclusively and recommended

According to the Contestant, the 2004 Will should not be admitted to probate; instead, a previous Will prepared by the Testatrix in 1984 should be declared the Testatrix' Last Will and Testament. The 1984 Will and the 2004 Will contained substantially different dispositions:

The 1984 Will

The 1984 Will is nine (9) pages in length with nine (9) sections. All real and personal property is bequeathed to Kristin Anne Morse, then a minor, with the exception of the Fiesta Ware Collection that is to be given to the Testatrix' sister, Cynthia A. Norten. If Kristin Anne Morse is still a minor at the time of distribution, then Donald L. Morse[2] becomes the guardian. Donald L. Morse is appointed executor of the estate, and Cynthia A. Norten was chosen as alternate executor of the estate.

The 2004 Will

The 2004 Will is three (3) pages in length with four (4) sections. All real and personal property is bequeathed to Francis J. LeCuyer, the Testatrix's husband, with the exception of the Fiesta Ware Collection that is to be given to the Testatrix' sister, Cynthia A. Norten. In addition, there is a Disinheritance Clause that expressly disinherits Kristin Anne Morse and any other person not specifically named in the Will. Francis J. LeCuyer is named executor of the estate, with Cynthia A. Norten as an alternate executor.

## ISSUES

The Court must now determine (1) whether the original 2004 Will was seen after the death of the Testatrix and (2) whether the 2004 Will meets the requirements of acknowledgment and attestation set forth in sections 13 and 14 of Title 15 of the Virgin Islands Code.

## ANALYSIS

### I. Original Will Seen After Death of Testatrix

 The Contestant contends that because the Petitioner has not produced the original 2004 Will, a rebuttable presumption arises that the

---

that the original first two pages of the 2004 Will along with more writing samples be submitted

[2] Donald Morse is the Contestant's father Hr'g Tr. 14, May 22, 2006.

Testatrix destroyed and thereby revoked that Will. In support of this argument the Contestant cites the well settled principle articulated in *Duvergee v. Sprauve*, 7 V.I. 248 , 413 F.2d 120, 123 (3d Cir. 1969), which provides:

> [I]f a will or codicil known to have been in existence during the testator's lifetime, and in his custody. or in a place where he had ready access to it, cannot be found at his death, a presumption arises that the will was destroyed by the testator in his lifetime with the intention of revoking it, and in the absence of rebutting evidence, this presumption is sufficient to justify a finding that the will was revoked. In order to rebut this presumption, the burden is on the proponent of the will to establish by clear, satisfactory and convincing evidence that there is no possibility that the will was destroyed by the testator.[3]

Although the Contestant correctly states the rule, she ignores its temporal element and fails to distinguish the facts of *Duvergee* from the facts of this case. In *Duvergee*, a copy of the decedent's Will was offered for probate because the original Will was not found after the death of the decedent. The proponent of that Will never alleged that the original was seen after the decedent's death. Accordingly, the *Duvergee* court applied the presumption that the decedent had revoked his Will, shifting the burden of proof to the proponent. Because the proponent failed to prove by clear, satisfactory, and convincing evidence that there was no possibility that the Will was destroyed by the decedent, the court held that the copy offered by the proponent "was not entitled to probate." *Id*. Thus, the proper threshold inquiry is whether the original purported Will was seen by anyone after the death of the decedent.

In the instant action, the Petitioner has proven by clear, satisfactory, and convincing evidence that there is no possibility that the Will was destroyed by the Testatrix. Unlike *Duvergee*, the Petitioner alleges that an original 2004 Will was seen after the death of the Testatrix. In his Affidavit of Discovery he avers that he received the 2004 Will from the Testatrix. The Petitioner has also submitted affidavits of two attesting Witnesses- declaring that the Petitioner delivered the original 2004 Will to

---

[3] Circumstantial evidence is admissible to prove that a will was not revoked or destroyed *In re Estate of Richards*, 45 V.I. 287, 288-89 (Terr. Ct. 2003).

them to be notarized. (Garry Pierce Aff. ¶ 2; Elizabeth Birney Pierce Aff. ¶ 2.)[4] Additionally, the Witnesses stated that they took the original 2004 Will to the Notary, Elizabeth Allred Hickey. (Garry Pierce Aff. ¶ 2, Elizabeth Birney Pierce Aff. ¶ 2.) The Notary confirmed her handwriting on pages two and three of the 2004 Will submitted to the Court. (Decl. of N.P. Jan. 22, 2005, Hickey Dep. 12:4-8.) Moreover, the Notary stated in her Declaration that the Witnesses asked her to notarize their signatures on an "original" Will. (Decl. of N.P. Jan. 22, 2005.) The Court therefore finds (1) that the original 2004 Will was seen by the attesting witnesses and the Notary subsequent to the death of the Testatrix, and (2) that the Petitioner, as the proponent of the 2004 Will, has rebutted the presumption of revocation.

 Once it has been established that the original Will was seen after the decedent's death, the proponent may proceed as if proving a lost Will. As the *Duvergee* court acknowledged,

> [I]n a proceeding for the probate of a lost will, when the will has been placed in the custody and control of a third person and it cannot be found among the effects of that person, no presumption of revocation by the testator arises from the failure to find it.

413 F.2d at 123. The proponent may prove the contents of the lost Will by presenting a copy of the Will. *In re Estate of Richards*, 45 V.I. 287, (VI. Aug. 15, 2003) (admitting a copy of a lost will to probate where the proponent had overcome the presumption of revocation). Accordingly, the copies of the first two pages of the 2004 Will presented in this case are admissible to prove the contents of the original 2004 Will.

## II. Validity of the 2004 Will

The Contestant further contends that the 2004 Will was not validly executed. A review of the 2004 Will reveals that the Virgin Islands statutory requirements for executing a Will have been met, however.[5]

---

[4] "Birney" is Elizabeth Birney Pierce's maiden name Although "Birney" is the name that appears on her affidavit, her married name, "Pierce," appears on her deposition transcript and other court documents; therefore, "Pierce" is used throughout this opinion for clarity.

[5] The Testatrix was domiciled in the U.S. Virgin Islands when she executed the 2004 Will in the state of Florida. Section 15 of Title 15 of the Virgin Islands Code provides:

Section 13 of Title 15 of the Virgin Islands Code outlines the requirements for the execution of a Will in the Virgin Islands:

### § 13. Manner of Execution of a will

Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:

(1) It shall be subscribed by the testator at the end of the will.

(2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.

(3) The testator, at the time of making such subscription. or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.

(4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will. at the request of the testator.

V.I. CODE ANN. tit. 15, § 13. Additionally, section 14 of Title 15 of the Virgin Islands Code provides that:

### § 14. Witnesses to a Will to Write Names and Addresses

The witnesses to any will shall write opposite to their names their respective places of residence; and every person who shall sign the testator's name to any will by his direction shall write his own name as a witness to the will. Omission to comply with either of these provisions shall not affect the validity of any will; nor shall any person be excused or incapacitated on account of such an omission from testifying respecting the execution of such will.

V.I. CODE ANN. tit. 15, § 14.

---

A will executed without the Virgin Islands in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of the Virgin Islands, provided such will is in writing and subscribed by the testator.

Because the Court concludes that the 2004 Will was validly executed under Virgin Islands law, it does not inquire Into the validity of the Will under Florida law.

■ In this case, the 2004 Will was subscribed by the Testatrix at the end of the document. The required signatures and addresses of the three attesting witnesses appear below the signature of the Testatrix as well. Additionally, the Petitioner submitted the affidavits and deposition testimony of the witnesses[6] in accordance with SUPER. CT. R. 194 (a), which provides in pertinent part:

> [T]he proponent of the will shall make proof before the judge of the Superior Court that the will was executed with the formalities required by law. Such proof of the proper execution of the will may be . . . by deposition of such attesting witnesses taken wherever they may be located or by affidavit of the subscribing witnesses, executed at or subsequent to the execution of the will in pursuance of the provisions of 15 V.I.C. § 22. Such affidavits of the subscribing witnesses shall be admissible to establish the contents thereof relate to the execution of the will, but the weight to be accorded such affidavits shall be determined by the judge of the Superior Court.

SUPER. CT. R. 194 (a). The Witnesses in their affidavits and also through deposition testimony explained that on June 15, 2004, the Testatrix in their presence declared the 2004 Will to be her Last Will and Testament and signed the Will. (Garry Pierce Aff. ¶ 1; Elizabeth Birney Pierce Aff. ¶ 1; Garry Pierce Dep. at 19:4-20.) The Witnesses go on to state that at the request of the Testatrix, the Witnesses then signed the 2004 Will at the end of the document, below the signature of the Testatrix. (Garry Pierce Aff. ¶ 1; Elizabeth Birney Pierce Aff. ¶ 1.)

Notwithstanding the evidence that the 2004 Will was properly executed, the Contestant argues that the 2004 Will was not properly attested and witnessed because the Will appears to have been altered after the death of the Testatrix. A review of the second page of the 2004 Will reveals that in two instances the date "June 15" had been crossed out and another date, "December 20." had been inserted. According to the Contestant, the alterations show that the witnesses did not sign the 2004 Will in the presence of the Testatrix because the Testatrix died on September 11, 2004, and the date that the attesting witnesses signed the

---

[6] One of the Witnesses, Jeanne E. Briggs, was not deposed.

2004 Will appeared to be December 20, 2004.[7] (Decl. of Contest Supp. January 31, 2006, ¶ 13.) The Contestant also cites to the fact that the Notary could not have notarized the 2004 Will until after the death of the Testatrix.[8] (Decl. of Contest ¶ 7.)

In response, the Petitioner refers to the affidavits of the Witnesses in which they averred that the Notary crossed out the date of June 15, which reflected the date the Testatrix and the Witnesses initially signed the original 2004 Will, and substituted the date of December 20, to reflect the date the Witnesses appeared before her. (Garry Pierce Aff. ¶¶ 2-3; Elizabeth Birney Pierce Aff. ¶¶ 2-3; Elizabeth Francis Hickey Aff. ¶¶ 2-3.) The Witnesses also averred that the Notary mistakenly changed the number of pages by crossing out the original number "3" and writing in the number "20"; then, upon realizing her mistake, the Notary crossed out the number "20" and rewrote the original number "3." (Garry Pierce Dep. at 22:2-8; Elizabeth Birney Pierce Dep. at 14:6-13.) Moreover, the Witnesses explain that the Notary had them sign the Will next to their previous signatures, after which the Notary wrote their driver's license numbers next to their respective signatures. (Garry Pierce Aff. ¶ 2; Elizabeth Birney Pierce Aff. ¶ 2.)

Next, the Contestant argues that the Declaration of Notary Public, submitted by the Petitioner to explain the markings made on the 2004 Will, is contradicted by the Notary's own deposition testimony, during which she denied having seen the Declaration attributed to her until it was sent to her by fax from the Contestant's counsel. (Hickey Dep. 10-14, 20:7-17, 17:4-6.) The Notary also denied having made the changes to the

---

[7] According to the witnesses, the Notary insisted on changing the date from June 15, 2004 to December 20, 2004 because she said the date had to reflect the date the witnesses signed in her presence. (Garry Pierce Aff. ¶ 3; Elizabeth Birney Pierce Aff. ¶ 3; Garry Pierce Dep. at 22:16-23:1; Elizabeth Birney Pierce Dep. at 13:11-24.)

[8]. Contestant also argues that the inconsistencies show that the Testatrix could have signed the 2004 Will and that after her death, a disinheritance clause was added. Contestant does not provide any evidence to support this contention, however. (Decl. of Contest Supp. January 31, 2006, ¶ 13)

The Contestant also offered into evidence the affidavit of Lou Morrissette and attachments thereto, which allegedly reflected notes of conversations between him and the Petitioner. Morrissette is the President and Treasurer of Marco, Inc. of which the Testatrix was a shareholder at the time of her death. The Court finds Mornssette's allegations, which suggest and intimate that the Petitioner authored or altered the 2004 Will, without merit.

date and number of pages on the 2004 Will.[9] *Id.* The Notary stated that she recognized her stamp and handwriting on the 2004 Will but did not remember placing it there.[10] (Hickey Dep. 12:4-6, 13:7-9, 14:8-15.) The Contestant argues that the Notary's denial of having seen or signed the affidavit directly contradicts the Witnesses' testimony. (Am. Reply to Resp. of Pet'r to Contestant's June 8, 2006 Supplement 2.)[11]

■ Petitioner, on the other hand, countered that the affidavits of Garry Pierce and Elizabeth Birney Pierce are consistent with their deposition testimony. (Pre-Hearing Memo of Pet'r 2-3.) Petitioner notes that the deposition testimony of the Notary is consistent with the affidavits of the Witnesses in that she admits that her handwriting and stamp appear on the 2004 Will. (Response of Pet'r to Contestant's June 8, 2006 Supplement ¶ 3; Pre-Hearing Memo of Pet'r 2-3.) Moreover, Petitioner contends that the deposition testimony of the Notary is based on a "distant and insecure" recollection and is relevant only to show that she handled the 2004 Will after it had been executed by the Testatrix and Witnesses. (Pre-Hearing Memo of Pet'r 3-4.)[12]

■ The Notary's basis for denying the cross-outs on the 2004 Will is that the inserted dates and page numbers were not her handwriting;

---

[9] At a hearing on October 3, 2005, Belfon, Esq. represented that he sent the affidavit to the Notary by fax and the Notary signed the affidavit and returned it to him also by fax. He used the actual documents that were sent by fax to and from him to refresh his recollection as to whether he sent the document by fax or by mail.

[10] It should be noted that the Declaration of the Notary appears to be notarized by the Notary herself. Title X, section 117.05 (1) of the Florida Statutes provides that "it is unlawful for a notary public to notarize his or her own signature."

[11] In a further attempt to discredit the witnesses, the Contestant states that although two of the witnesses appeared to be good friends of both the Petitioner and Testatrix, they may have had a stronger relationship with the Petitioner. Contestant points to the deposition testimony of the witnesses which confirmed that the witnesses, as well as the Testatrix and Petitioner, were good friends and that the Petitioner and one witness, Garry Pierce were former co-workers in St. Thomas. (Garry Pierce Dep. 12:3-14; Elizabeth Birney Pierce Dep. 5-6.) Contestant also mentions that according to the deposition testimony of Elizabeth Birney Pierce, Petitioner had visited the Pierces in Florida a number of times without the Testatrix who couldn't come due to work. (Elizabeth Birney Pierce Dep. 9:2-7.) The Contestant's mere reference to the statements of the witnesses, without more, is insufficient for this Court to find that the Witnesses are biased and therefore not credible.

[12] In her deposition the Notary, referring to the notarization of the 2004 Will, stated that, "I barely remember this; this is two years ago. I barely remember it." (Hickey Dep. 8:24-25.) The Notary further states, "I don't remember this whole thing I can't remember the whole — people coming in, I don't remember anything . . . ." (Hickey Dep. 14:8-15).

however, the Notary does confirm that the driver's license numbers written on the second and third pages of the 2004 Will are in her handwriting. (Hickey Dep. 12:1-12.) Although the Notary does not recall crossing out the dates and page numbers on the 2004 Will, she stated in her deposition testimony that she would normally cross out the date on a document if that date was in fact different from the date she was notarizing the document. (*Id.* at 13:12-20.) The "cross-outs" and "insertions" made on the second page of the 2004 Will have been satisfactorily explained by the Witnesses, notwithstanding the inconsistencies between the deposition testimony of the Witnesses and that of the Notary. Neither the affidavits of the Witnesses nor their depositions have been successfully controverted by the Contestant or anyone on her behalf.

### CONCLUSION

The Court finds that the original 2004 Will was seen by Petitioner, the Witnesses and the Notary, subsequent to the death of the Testatrix. The Court also finds that the 2004 Will was validly executed in accordance with sections 13 and 14 of Title 15 of the Virgin Islands Code. The 2004 Will was subscribed by the Testatrix on June 15, 2004 at the end of the document, in the presence of at least two witnesses, who also signed at the end of the document at the request of the Testatrix. The Testatrix declared the 2004 Will to be her Last Will and Testament in the presence of the Witnesses. Ergo, the 2004 Will will be admitted to probate.

An Order of even date follows.