16186

DAVIS *ET AL.* v. DAVIS *ET AL.*

(52 S. E. (2d) 192)

*Mr: M. L. Meadors,* of Florence, *for Appellants,*

*Messrs. Lee & Shuler,* of Kingstree, *and Emerson L. Ard,* of Hemingway, *for Respondents,*

February 18, 1949.

BAKER, Chief Justice.

James B. Davis, who was a resident of Williamsburg County, South Carolina, for many years, and who lived in the Midway Section of that County in the year 1942, suffered what is termed in the record a stroke during the month of May or June of that year, the exact nature and extent of which is not shown in the record. Although Davis was not confined to bed from the time he suffered this stroke to the time of his death, the evidence shows that he was not fully able to transact his business affairs without considerable help from others. Davis was a farmer and the lower Court found that as a result of the stroke he "became practically physically incapacitated." During the same year that Davis suffered the stroke, he went to the office of Mr. J. M. Spivey, a Magistrate in Hemingway, South Carolina, and there executed a last will and testament. The exact dates are difficult

to determine from the record, but it appears that he executed the will subsequent to suffering the stroke.

Under the terms of the will executed by Davis in the office of Magistrate Spivey (and so far as the record discloses this was the only will ever made by Davis), he left to his brother, London D. Davis, the sum of $5 or $10, and the entire balance of his estate to his widow, Catherine Davis, for and during her lifetime, with the provision that it should be divided after her death between Lillian Davis, described as his adopted daughter, and Roosevelt Burgess, a brother-in-law. William Donnely was named Executor of the will. Davis at the time of his death left an estate which consisted principally of about one hundred fifty acres of farm land in Williamsburg County.

After the will was executed Davis at first kept it in his pocket, but about three weeks before his home and its entire contents were completely destroyed by fire, he put the will between the mattress and springs of the bed in which he and his wife slept. The exact date when his home burned is not clear, but the nearest date fixed in the record is the last part of the month of May in the year 1943. The will and other papers of Davis, including deeds to property, were destroyed by the fire, as were all of the other contents of the home, as aforesaid.

On either July 5 or July 6, 1943, Davis in company with his brother, London D. Davis, went to see Emerson L. Ard, Esq., an attorney in Hemingway, South Carolina, for the purpose of purchasing one of Mr. Ard's discarded suits of clothes. While talking to Mr. Ard, Davis told him about his home burning down and about losing everything that he had in the home, and inquired of Mr. Ard how he could get deeds for the ones which were destroyed in the fire. Mr. Ard informed him how to replace the deeds with certified copies from the Clerk of Court. Davis then asked Mr. Ard what would happen if a will were destroyed and we quote from the testimony of Mr. Ard the information he gave to Davis: "I

said if a will is destroyed it is just destroyed." Davis then asked Mr. Ard what happened to the property of one who does not have a will and we quote further from the testimony of Mr. Ard the information Davis received from him: "I said under the statute of distribution the property is divided. He did not tell me that he had a will and I did not know that he had a will. I told him what the statute of distribution was and I think he went on over to Mr. Spivey's office about the same time with London." On September 9, 1943, James B. Davis died suddenly while sitting in a chair. On October 15, 1943, his widow, Catherine Davis, filed in the Probate Court for Williamsburg County a petition to prove the will executed by Davis in 1942 in common form of law. This petition, which is duly verified, sets forth substantially the facts above outlined with reference to the execution of the will, its contents and its destruction, and is supported by an affidavit of Mr. J. M. Spivey that during the latter part of 1942 he prepared a will for James B. Davis at his instance and request, that the same was duly executed by James B. Davis as his last will and testament as provided by law, and that the contents of the will were as outlined above, except no mention is made of the bequest of $5 or $10 to London D. Davis. There appears to be no formal order of the Probate Court admitting the will to probate in common form or otherwise, but on November 5, 1943, letters testamentary were issued to William Donnely, "named Executor in the last will and testament of James Davis," and which letters testamentary further recited "that on the 5th day of November which was in the year of our Lord one thousand nine hundred forty-three, the last will and testament of James Davis, late of Williamsburg County, in this State, deceased, was proved, approved and allowed of."

This suit was commenced on November 30, 1944, for the partition of the lands of which James B. Davis died seized and possessed, namely, a tract of one hundred forty-eight acres situate in Williamsburg County. The suit is by London D. Davis, the legatee named in the above will, a brother of

the deceased, and Margaret Davis, the widow of another brother, Ben Davis, who survived the deceasel but died intestate before suit was brought, against the widow of the deceased, Catherine Davis, and Rosena Davis, James B. Davis, Manda Davis and Violet Davis, children of the deceased brother, Ben Davis. Lillian Davis and Roosevelt Burgess are made parties on the allegation that they claim some interest in the property. The widow, with Lillian Davis and Roosevelt Burgess, answered the complaint and among other . defenses set up ownership of the lands in question under the will above referred to. The other defenses set up by these defendants will not be considered because under the view we have taken of the case they would not change the result.

The special referee to whom the cause was referred and before whom the testimony was taken, decided that the will of James B. Davis had been admitted to probate and that the judgment of the Probate Court could not be attacked in this proceeding and therefore recommended that the complaint be dismissed. The Circuit Judge who heard exceptions to the report of the referee decided that the proponents of the will of James B. Davis had failed to meet the requirements for proof of such a will, and that if such a will had been established, then James B. Davis, the testator, clearly adopted the burning or destruction of the will *animo revocandi*. From this decision the devisees under the will, Catherine Davis, Lillian Davis and Roosevelt Burgess, have appealed to this Court by twenty-eight exceptions. It seems to us that if it is determined that James B. Davis did make a valid will in 1942 and did not prior to his death revoke such will, or that the will was duly admitted to probate by the Probate Court and it was not required to be proved in due form of law, then all other issues in this case become moot questions.

The Court of Probate in South Carolina has only such jurisdiction as is vested in it by the General Assembly, but limited by Section 19 of Article 5 of the State Constitution of 1895. In such matters as the Probate

Court may be granted jurisdiction, it is no longer subject to doubt but that the Court of Common Pleas has concurrent jurisdiction on such matters with the Court of Probate. Needless to say that among the several matters to which the Probate Court has been granted jurisdiction are matters testamentary. By Section 8930 of the 1942 Code of Laws of South Carolina it is provided that wills shall be proved before the Probate Julge of the County where the testator resided. By Section 8932 of said Code, the Judge of Probate is authorized to receive proof of wills in common form and "if such proof shall satisfy the judge of probate that the paper is the last will and testament of the deceased he shall admit it to probate in common form." In the instant case evidence of the lost will of James B. Davis was presented to the Probate Court for Williamsburg County for probate, and although there is as above stated no separate order admitting such will to probate, the Probate Court in writing did on November 5, 1943, issue letters testamentary under such will to the named executor therein, to wit, William Donnely, and recited in such order of letters testamentary that on the same day the said last will and testament of James Davis, deceased, was proved, approved and allowed. In our opinion this recitation in the order for letters testamentary is sufficient to conclude that on November 5, 1943, the destroyed will of James B. Davis was duly admitted to probate in common form by the Probate Court for Williamsburg County.

In the case of *Lowe v. Fickling,* 207 S. C. 442, 36 S. E. (2d) 293, we set forth the presumptions arising when a testator takes possession of his will and the same cannot be found after his death, and we also set forth the burden of proof in connection with the establishment of certain facts with reference thereto. What we said there is applicable to the instant case. Under such circumstances the law presumes that the testator destroyed the will *animo revocandi,* but this is merely a presumption of fact and may be rebutted by evidence to the contrary. The burden of proof

rests upon the proponents of the will to further establish facts which show that the maker of the will either did not destroy the will for the purpose of revoking the same, or that the will was destroyed by accidental means. When evidence of the destroyed will of James B. Davis was offered for probate to the Judge of Probate for Williamsburg County, all of the above considerations were for judicial determination by that Court, and if the proof submitted satisfied the Judge of Probate that James B. Davis executed the will in question in the manner provided by law, and that the will was not revoked by James B. Davis in any of the ways set forth in Section 8921 of the 1942 Code of Laws of South Carolina, or that its destruction was purely accidental, it was proper for that Court to admit the will to probate in common form under Section 8932 of the 1942 Code. As stated above it is our opinion that the Probate Court, which very properly had jurisdiction, did upon the proof offered admit said will to probate on November 5, 1943, and we must therefore presume that in doing so it was satisfied with the proof offered.

The concurrent jurisdiction of the Court of Common Pleas with the jurisdiction of the Court of Probate does not extend the jurisdiction of the Court of Common Pleas to re-hear and determine matters in which the Probate Court has already assumed jurisdiction and acted thereon, except by appeal from such Court as provided for under the statutes and then only within the time therein prescribed. In the case of the probate of wills under Section 8932 of the 1942 Code, the admission of a will to probate in common form by the Probate Court is declared good unless some person or persons interested to invalidate the same as a will shall give notice to the Judge of Probate, within one year next after such probate in common form is allowed, that he or she or they require the will to be proved in due form of law. In case any party interested be subject to the disability of infancy, then the notice for proof of the will in due form of law may be given within one year next after such disability is removed. Upon receiving proof of the will in

due form of law, the Probate Court shall then, if the proof be sufficient, pronounce by its decree the validity of the will, or if it be insufficient, pronounce its invalidity. From this decree an appeal may be taken to the Court of Common Pleas and in the trial in the Court of Common Pleas upon such appeal, the issue of "will," or "no will" shall be tried *de novo*.

In the instant case the will in question was admitted to probate in common form by the Probate Court on November 5, 1943, and no effort in the Probate Court has been made to require the will to be proved in solemn or due form of law, and therefore the will must stand. Had suit been brought in the Court of Common Pleas to establish the lost will of James B. Davis prior to any action in the Court of Probate, the Court of Common Pleas could then have determined the issue of will or no will in the first instance.

In the case of *Ward v. Glenn*, 9 Rich. Law 127, this Court said:

"The ordinary having granted probate of this will in common form, and four years having elapsed—the time within which by the 11th Sec. of the Act of 1839 (11 Stat. 41) it may have been proved per testes or in due form of law—we cannot now call in question its legal validity or formal execution. It is the act of a court having jurisdiction over the subject matter. When the will was propounded it was competent for the ordinary to have inquired if Lucy Ivey possessed testamentary capacity; but the grant of probate, without appeal, admits her capacity and we cannot consider that question while the probate is unrevoked.

"It is not necessary to inquire whether the ordinary may revoke his probate granted more than four years before an application is made for that purpose. This is not an appeal from his sentence touching the proof of the will; but from his decree refusing administration on the ground, that the validity of the will and the grant of probate are *res judicata*. His probate cannot be impeached in any other court, and the

admission of evidence to prove the want of testamentary capacity would be directly against the record. In *Noell v. Wells*, 1 Lev. 235, the defendant was not allowed to prove that the will was forged, because it was said to be against the seal of the ordinary in a matter proper for his jurisdiction. 'Evidence may be given that the seal was forged, because that confesses and avoids it; but not that another was executor, or that the testator was *non compos mentis*, for these falsify the proceedings of the ordinary in cases of which he is judge.' The probate, says Swinburn, is not traversable but the effect of it may be traversed, as that the testator did not make him executor who claims by the probate. Swinb. 450."

In the case of *Hembree v. Bolton*, 132 S. C. 136, 128 ■ S. E. 841, this Court considered the effect of the admission of a will to probate in common form by the Court of Probate, and from both the majority opinion and the dissenting opinion it is there well established that the probate of a will in common form by the Probate Court settles all questions as to the formalities of its execution and the capacity of the testator, and we might add the validity of the will to the extent that the deceased died testate, but such probate does not affect the validity or invalidity of any particular clause or settle any question of construction. The probate in common form until challenged by requiring its proof in due form, also establishes that there was no complete revocation of the will although it is intimated that a revocation which does not wholly defeat the will is not a question presented for the Probate Court to determine in the admission of the will to probate. See also *Burkett v. Whittemore*, 36 S. C. 428, 15 S. E. 616; *Prater v. Whittle*, 16 S. C. 40, and *Wilkinson v. Wilkinson*, 178 S. C. 194, 182 S. E. 640.

As stated in 68 C. J. p. 874, the probate of a will is ■ ■ in nature a proceeding *in rem*, wherein all persons having any interest are deemed parties and concluded by the decision therein. Our conclusion in this case is further confirmed by the following citation from 68 C. J. pp. 1228,

1229 : "Conclusiveness of Proceedings—(a) In General. As a proceeding to probate a will is a judicial one, a judgment or decree admitting a will to probate stands on the same footing as a judgment of any other court of competent jurisdiction; and, while it is not conclusive in the sense that a person having the requisite interest may not attack it by a direct proceeding within the period of time allowed by statute, without a statute conferring the right to contest, the order admitting the will to probate would be final on all parties. So, after the lapse of time allowed to have it set aside or annulled, or within that period and before action is taken, it stands as an adjudication that the instrument probated is the last will and testament of deceased, and it is conclusive of all matters properly before the court for determination. This conclusiveness attaches, even though the judgment or decree is general in its terms, or though the record is in some respects incomplete; * * *"

The lower Court concluded that there was no warrant for the proof of a lost or destroyed will in the Probate Court. With this view we cannot concur. By Section 19 of Article 5 of the Constitution it is provided that the Court of Probate shall be vested with jurisdiction in all matters testamentary to the extent provided by the General Assembly. Section 8930 of the Code provides that wills shall be proved before the Judge of Probate of the County where the testator resided. It is true that under Section 8932 of the Code, which sets forth how wills shall be proved before the Court of Probate, it is stated that when a paper is offered before a Judge of Probate as the last will and testament of a person deceased the Judge of Probate may admit it to probate in either of two forms, namely, "common form" and "due form of law." The right of a Court of Probate to admit a lost or destroyed will is as completely vested in the Judge of Probate of the County where the testator resided by Section 8930 as if said Section specifically stated that lost or destroyed wills should be proven before him, and in the light of this construction of Section 8930 the use of the words

"when a paper is offered" in Section 8932 would not limit his right only to existing wills, and in our opinion Section 8932 should and does govern the procedure for the proof of lost or destroyed wills as well as wills in existence. This being so, then it was proper for the Probate Judge of Williamsburg County under Section 8932 to admit the destroyed will of James B. Davis to probate in common form upon such proof as satisfied him that James B. Davis executed during his lifetime a last will and testament as provided by law, that such will was not revoked by him in any of the ways provided for by Section 8921 of the Code, that the will was accidentally destroyed, and that its contents were sufficiently known and proven.

The lower Court in reaching the conclusion that it did, held that the judgment of the probate Court in admitting the destroyed will to probate was void and not voidable, since the infirmity of the judgment appears on the record itself, citing *Scott v. Newell*, 146 S. C. 385, 144 S. E. 82; *Finley v. Robertson*, 17 S. C. 435, and *Hood v. Cannon*, 178 S. C. 94, 182 S. E. 306. It is not necessary to here consider whether the judgment was voidable because if it were only voidable it would not be subject to attack in the Court of Common Pleas. Having concluded above that the Probate Court did have jurisdiction to admit the destroyed will of James B. Davis to probate in common form and that the quantum of proof was such as to satisfy the Judge of Probate as to the genuineness of the will, the inescapable conclusion is that the judgment admitting the will to probate was not in any sense void. In the light of the statutory procedure for the probate of wills, the probate of a will in common form by the Probate Court is voidable only by requiring proof of the will in solemn or due form of law within the time required by statute, otherwise the probate in common form shall be conclusive of all matters relating to the validity of the will, but, as pointed out above, such probate does not affect the validity or invalidity of any particular clause or settle any question of construction.

Having reached the conclusion that the probate of the will of James B. Davis could not be attacked in this cause, it is unnecessary to determine whether or not he did make a valid will in 1942 and did not prior to his death revoke the same. We have, however, considered these questions and shall set forth our views. A careful study of the record reveals conclusively that James B. Davis did make a valid will in 1942 which was accidentally destroyed by fire some time during the year 1943, probably the latter part of May, and that there is not sufficient evidence in the record from which it could be concluded that James B. Davis intended to adopt the accidental destruction as a revocation of the will.

The scrivener of the will, Mr. J. M. Spivey, testified in this case and his affidavit made before the Court of Probate was in the record. His testimony shows that there were three witnesses to the will, that they were all present and witnessed the signature of the testator, and his affidavit states positively that the will was executed by the testator as provided by law. No effort was made by the respondents to show by this witness or any other witness in detail that the will was not executed in the manner provided by law. In fact any detailed analysis of the signing of the will was studiously avoided by the respondents. In the light of this affidavit and his testimony we must conclude that the will in question was properly executed by the testator in accordance with the provisions of the pertinent statute.

That the will was accidentally destroyed by fire is open to no doubt, whatsoever. Therefore, unless the testator adopted this accidental destruction as his own act, coupled with the intention to revoke the will, then the destroyed will when properly proven must stand. The legal presumption which we spoke of in *Lowe v. Fickling, supra,* which arises when a testator takes possession of his will and the same cannot be found after his death, namely, that the testator destroyed it *animo revocandi,* no longer exists when the destruction of the will is clearly shown to have been by

accidental means. This is necessarily so since the fact completely rebuts the presumption that the testator destroyed the will. Nor do we think that the mere fact that the testator had knowledge of the accidental destruction would give rise to a presumption that the testator intended to adopt the accidental destruction as a revocation thereof. In Underhill on Wills, Par. 225, page 308, the rule is stated thus: "If the will is destroyed without the consent of the testator, the act of destruction may be a valid revocation if it is ratified by him subsequently. But the ratification must be evidenced by some act from which the court may with reason infer that the original act of destruction was approved by the testator. Mere silence on the part of the testator or a refusal to make a new will is not enough alone from which to imply a ratification."

In 57 Amer. Jur., Wills, Section 497, it is stated in connection with the revocation of a will (not destroyed by the testator) by ratification or adoption of the act of destruction as follows: "* * * But proof merely that the testator apparently acquiesced in the destruction or mutilation of his will by another and his failure to make a new will is not sufficient to establish an intent on his part to adopt such destructive acts with intent to revoke the will, especially where the testator was in very poor condition, both physically and mentally, following his discovery of the fact that the will had been destroyed."

Again in 57 Amer. Jur., Wills, Section 566, in connection with the weight and sufficiency of evidence, it is stated: "Clear evidence is required to prove an intent to revoke a will once regularly made * * *."

The substance of the evidence relied on to establish a revocation of the will in this case by adoption or ratification, is the testimony of the widow to the effect that the testator talked about his will after it was burned and stated that he was planning on making another, but that he did not make it before he died, and also the testimony of Emerson L. Ard, Esq., with reference to the conversation

which he had with the testator on July 5 or July 6 at Hemingway and as set forth above. The fact that the testator intended to make another will is no evidence whatsoever that he intended to adopt the destruction of the will accidentally as a revocation thereof, for the obvious reason that it could just as well be presumed that it was his intention to republish the will in the same terms. The testimony of his conversation with Mr. Ard, especially in view of the fact that Mr. Ard gained the impression that after he talked to the testator he went to the office of Mr. Spivey, would seem to negative the idea that the testator desired to die intestate. In all events, however, the record is wholly insufficient to establish by clear evidence that James B. Davis intended to adopt the accidental destruction as his own act of revoking the will. Any other conclusion would be based upon a presumption which is unwarranted under the law.

For the foregoing reasons this Court is of the opinion that the Decree of the Circuit Judge should be reversed and the cause remanded to the Court of Common Pleas for Williamsburg County with instructions to dismiss this action, and it is so ordered.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.