677 S.E.2d 213

**James T. JUDY, Respondent,**

v.

**Ronnie F. JUDY, Appellant.**

No. 4528.

Court of Appeals of South Carolina.

Heard March 5, 2009.
Decided April 8, 2009.
Rehearing Denied June 17, 2009.

4

Glenn Walters, Sr., and R. Bentz Kirby, both of Orangeburg, for Appellant.

Capers G. Barr, III, of Charleston, for Respondent.

CURETON, A.J.

Ronnie F. Judy (Ronnie) appeals from the jury's verdict against him, arguing the circuit court erred in declining to dismiss the suit against him on the basis of laches, collateral estoppel, or res judicata, and in declining to permit him to amend his answer to include a defense of waiver. We affirm in part and reverse in part.

## FACTS

In 1983, Vesta Rumph (Mrs. Rumph) died, leaving three parcels of real property to be distributed equally between brothers Ronnie and James T. Judy (James).[1] The three parcels included a 10.9–acre tract (10.9–acre Tract), a 9.29–acre tract on which stood the family homestead (Homestead Tract), and a 134.71–acre tract which included an eleven-acre manmade pond (Pond Tract). The property was not formally distributed between the men for many years. Pursuant to an oral agreement between the men, Ronnie took possession of the Homestead Tract and lived in the Rumph homestead, and James took possession of the other two tracts. From July 1983 until October 15, 2001, Ronnie served as personal repre-

---

1. Mrs. Rumph was not related to Ronnie or James. She and her husband were friends of the Judys' father. When Mrs. Rumph became elderly, Ronnie and James cared for her, and she devised her property to them.

sentative of Mrs. Rumph's estate (Estate). In 1999, Ronnie deeded his half-interest in the tracts to J. Todd Judy.

On February 8, 2001, James filed suit in probate court seeking partition of the Estate's property. On February 12, 2001, Ronnie executed a Deed of Distribution in his capacity as personal representative of the Estate granting ownership of the three tracts to himself and James as the heirs. However, because Ronnie disclaimed any interest in the property based on his 1999 transfer of his interest, he was dismissed from the suit in his personal capacity.[2]

In August 2001, on behalf of the Estate, Ronnie executed and recorded a deed purporting to convey full ownership of all three tracts to J. Todd Judy and Ryan C. Judy. Subsequently, James petitioned to have Ronnie removed as personal representative of the Estate. Ronnie was served with notice this petition would be heard on October 9, 2001. The day before this hearing, Ronnie executed an agreement on behalf of the Estate leasing twenty-five acres of the Pond Tract to a third party for fishing purposes for a period of ten years. On October 15, 2001, the probate court removed Ronnie as personal representative of the Estate and appointed James in his place.

In November 2001, J. Todd Judy and Ryan C. Judy recorded a deed purporting to convey title to the Homestead Tract to Wanda Judy. Later, James petitioned on behalf of the Estate to recover the property Ronnie had conveyed, including the Homestead Tract. The probate court found Ronnie's August 2001 deed was invalid, the subsequent conveyance to Wanda Judy was void, and the Estate owned all three tracts. Later, the probate court found the Estate validly conveyed ownership of the three tracts equally to Ronnie and James through the February 12, 2001, deed of distribution, and therefore, both men's signatures were required for a valid sale of the property.

In May 2003, someone operating a backhoe damaged the earthen dam supporting the eleven-acre manmade pond on the Pond Tract, and the pond drained completely. In November 2003, James again petitioned the probate court to partition the

---

2. The property was not partitioned as a result of that suit.

6

property and also to void the October 2001 fishing lease. On January 7, 2004, the probate court granted the relief sought, awarding ownership of the Pond Tract to James and the 10.9–acre and Homestead Tracts to Ronnie. In December 2005, James sold the Pond Tract for $1.28 million.

In November 2005, James filed a circuit court suit sounding in tort against Ronnie for the loss of the pond. Ronnie represented himself until near the eve of trial, when he finally retained counsel. Just before trial, Ronnie moved to dismiss for lack of subject matter jurisdiction, arguing James's suit was barred by laches, collateral estoppel, and res judicata, and moved to amend his answer to add the defense of waiver. The circuit court denied the motion to dismiss as to collateral estoppel and res judicata. The case proceeded to trial. Following presentation of the evidence, the circuit court permitted amendment of the answer to include laches but immediately found no evidence existed to support that defense. The circuit court also permitted amendment of the answer to include waiver. However, after argument, the circuit court declined to charge the jury on waiver. The jury returned a verdict in James's favor. The circuit court denied Ronnie's posttrial motions for judgment notwithstanding the verdict and for a new trial. This appeal followed.

## STANDARD OF REVIEW

An action in tort for damages is an action at law. *Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554, 560, 619 S.E.2d 5, 9 (Ct.App.2005). In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law. *Erickson v. Jones Street Publishers, L.L.C.*, 368 S.C. 444, 464, 629 S.E.2d 653, 663–64 (2006).

## LAW/ANALYSIS

Ronnie argues the circuit court erred in refusing to dismiss James's suit for waste on the bases of collateral estoppel, laches, and res judicata. We disagree as to collateral estoppel and laches. However, we agree as to res judicata.

## I. Collateral Estoppel and Laches

 Collateral estoppel, or issue preclusion, prohibits a court from adjudicating an issue that was "actually litigated and determined by a valid and final judgment" in a prior suit. *Zurcher v. Bilton*, 379 S.C. 132, 135, 666 S.E.2d 224, 226 (2008). Collateral estoppel applies to specific issues, regardless of whether the claims in the first and subsequent suits are the same. *Id.* It applies only if "the precluded party has had a full and fair opportunity to litigate the issue in the first action." *Id.*

 "Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights." *Chambers of S.C., Inc. v. County Council for Lee County*, 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993). In determining whether laches bars a claim, the court has broad discretion and should consider the circumstances of the case, "including whether the delay has worked injury, prejudice, or disadvantage to the other party." *Id.*, 434 S.E.2d at 281.

 The circuit court did not abuse its discretion in refusing to dismiss James's suit for waste on the basis of collateral estoppel or laches. Collateral estoppel is inapplicable because the probate court did not adjudicate the issue of fault for destruction of the dam. *See Zurcher*, 379 S.C. at 135, 666 S.E.2d at 226. In addition, the circuit court's refusal to dismiss the waste suit on the basis of laches was within its broad discretion. James clearly knew during the pendency of the partition suit that the destruction of the dam and pond diminished the value of the Pond Tract. No evidence indicates in the nearly three years between the probate court's decision and the filing of the circuit court suit Ronnie detrimentally changed his position in reliance on James's decision not to pursue a claim for this loss in value. Ronnie testified he intended to appeal the probate court's order but lost his right to do so because his attorney delayed in filing a notice of appeal. The record does not reflect Ronnie would have demanded a determination of lost value had he known James would pursue this claim in a separate suit. To the contrary,

Ronnie testified that, had the probate court determined he was responsible for the diminution in the Pond Tract's value, he "would have had to go to the bank and borrow money and walk off from the place." Adjudication of this claim by a different court in an entirely separate suit certainly is not judicially economical when the probate court could have disposed of it in the context of the partition suit. However, a tax on the judiciary does not equate to a detrimental change in position by a party. Accordingly, neither collateral estoppel nor laches bars James's suit for waste.

## II. Res Judicata

When claims arising out of a particular transaction or occurrence are adjudicated, res judicata bars the parties to that suit from bringing subsequent actions on either the adjudicated issues or any issues that might have been raised in the first suit. *Plott v. Justin Ent.*, 374 S.C. 504, 511, 649 S.E.2d 92, 95 (Ct.App.2007). Res judicata requires proof of three elements: 1) a final, valid judgment was entered on the merits of the first suit; 2) the parties to both suits are the same; and 3) the subsequent action involves matters properly included in the first action. *Id.*

> [T]he rule precluding relitigation of issues which might have been raised in the prior action applies only where the two actions involve the same cause of action; but all questions which were actually litigated in the prior action and determined by the judgment are conclusive in any subsequent action between the parties, or their privies, regardless of whether the subsequent action involves the same or a different cause of action.

*Lowe v. Clayton*, 264 S.C. 75, 82, 212 S.E.2d 582, 585–86 (1975).

Whether res judicata precludes a claim because the first and subsequent suits involve the same cause of action is not merely a matter of aligning identical causes of action or theories of liability; rather, the subject matter of the two suits must be the same. *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 35, 512 S.E.2d 106, 109 (1999). "The test utilized by this court for comparing two causes of action is to determine whether the primary right and duty and the delict or

wrong are the same in both actions." *Plum Creek Dev. Co. v. City of Conway,* 328 S.C. 347, 350, 491 S.E.2d 692, 694 (Ct.App.1997), *aff'd as modified,* 334 S.C. 30, 512 S.E.2d 106 (1999); *see also Nunnery v. Brantley Constr. Co., Inc.,* 289 S.C. 205, 210, 345 S.E.2d 740, 743 (Ct.App.1986).

> South Carolina courts use various tests in determining whether a claim should have been raised in a prior suit: 1) when there is identity of the subject matter in both cases; 2) where the cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; 3) when there is the same evidence in both cases; and recently 4) when the claims arise out of the same transaction or occurrence.

334 S.C. at 35 n. 3, 512 S.E.2d at 109 n. 3 (citing James F. Flanagan, South Carolina Civil Procedure 649–650 (2d ed.1996)). Seeking a different remedy in the second suit for the same wrong does not alter the identical nature of the subjects of the two actions. 334 S.C. at 35, 512 S.E.2d at 109. "[F]or purposes of res judicata, 'cause of action' is not the form of action in which a claim is asserted but, rather the 'cause for action, meaning the underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon.' " *Id.* at 36, 512 S.E.2d at 109–110 (quoting 50 C.J.S. Judgment § 749 (1997)).

The circuit court erred in declining to dismiss James's suit for waste on the basis of res judicata because Ronnie satisfied all three required elements. The probate court's final, valid order adjudicating the partition suit satisfies the first element. *Plott,* 374 S.C. at 511, 649 S.E.2d at 95. Ronnie's and James's participation in the partition suit satisfies the second element, identity of the parties to both suits.[3] *Id.* The third element, identity of the subject matter of both suits, is also satisfied. *Id.; see also Plum Creek,* 334 S.C. at 35, 512 S.E.2d at 109. Certainly, the remedies sought in the partition and waste suits differed considerably, even in the

---

3. While the plaintiff in the partition suit was the Estate, with James as its personal representative, both men participated in the partition suit in their individual capacities and had the opportunity to cross-claim against each other. We do not address the differences between their roles in the partition and waste suits because neither party argued this point.

nature of the relief sought. The probate court heard a petition for equitable relief, partition of jointly owned land. By contrast, the circuit court heard a tort suit for waste, a legal action. However, identity of the subject matter of the two suits rests not in their forms of action or the relief sought, but rather, in the combination of the facts and law that give rise to a claim for relief. *Plum Creek*, 334 S.C. at 36, 512 S.E.2d at 109–110. Partition of ownership stripped Ronnie of his rights and duties related to the Pond Tract after the pond was lost. The waste suit settled the issue of fault for the loss of the pond. James's interest in the Pond Tract suffered when the earthen dam on that parcel of land failed under Ronnie's care. Both suits arose from this fact. Consequently, the circuit court erred in finding res judicata did not preclude the waste suit.

Ronnie also argues the circuit court erred in refusing to permit him to amend his answer to allege the defense of waiver. We do not reach this issue because our ruling on the applicability of res judicata disposes of this appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

As to the issue of whether the circuit court erred in denying Ronnie's motion to dismiss, we find neither collateral estoppel nor laches bars this action. Consequently, we affirm the circuit court's refusal to dismiss on those bases. However, we find res judicata applies. Therefore, we reverse the circuit court's refusal to dismiss on the basis of res judicata. Because our reversal on the basis of res judicata disposes of this appeal, we do not reach the issue of whether the circuit court erred in declining to permit Ronnie to amend his answer to allege the defense of waiver. Accordingly, the decision of the circuit court is

**AFFIRMED IN PART AND REVERSED IN PART.**

PIEPER and LOCKEMY, JJ., concur.