712 S.E.2d 408

**James T. JUDY, Petitioner,**

v.

**Ronnie JUDY, Respondent.**

**No. 26987.**

Supreme Court of South Carolina.

Heard Feb. 3, 2011.

Decided June 20, 2011.

Rehearing Denied Aug. 5, 2011.

162

Capers G. Barr, III, of Barr, Unger & McIntosh, of Charleston, for Petitioner.

R. Bentz Kirby, of Orangeburg, for Respondent.

Justice BEATTY.

Following the resolution of his partition action in probate court, James Judy ("James") filed suit in circuit court asserting a cause of action for waste against his brother, Ronnie Judy ("Ronnie"), for the destruction of a pond located on a tract of real property involved in the partition action. A jury found in favor of James and awarded him actual and punitive damages. Ronnie appealed the jury's verdict, arguing the circuit court erred in declining to dismiss the suit against him on the basis of laches, collateral estoppel, or *res judicata,* and in declining to permit him to amend his Answer to include the defense of waiver.

On appeal, the Court of Appeals affirmed the circuit court's refusal to dismiss Ronnie's suit on the basis of collateral estoppel and laches. The court, however, reversed the circuit court's refusal to dismiss the suit on the basis of *res judicata. Judy v. Judy,* 383 S.C. 1, 677 S.E.2d 213 (Ct.App.2009). This Court granted James's petition for a writ of certiorari to review the decision of the Court of Appeals as to whether *res judicata* operated to preclude the waste lawsuit. We affirm.

## I.  Factual/Procedural History

On May 13, 1983, Vesta Rumph ("Mrs.Rumph") died testate, leaving three parcels of real property in Dorchester County to be distributed equally between Ronnie and James. The three parcels included: (1) a 10.9–acre tract ("10.9–acre Tract"); (2) a 9.29–acre tract, on which the Rumph family homestead stood ("Homestead Tract"); and (3) a 134.71–acre tract, which included an 11–acre, man-made pond ("Pond Tract").

Although the property was not formally distributed for many years, the brothers orally agreed that Ronnie would take possession of the Homestead Tract and live in the Rumph homestead, and James would take possession of the remaining two tracts. From July 1983 until October 15, 2001, Ronnie served as personal representative of Mrs. Rumph's estate ("Estate").

On February 8, 2001, James filed suit in probate court[1] seeking partition of the Estate's property.[2] On February 12, 2001, Ronnie executed a Deed of Distribution in his capacity as personal representative of the Estate granting ownership of the three tracts to himself and James as the heirs.

As a result of alleged dubious transactions regarding the property, James petitioned to have Ronnie removed as personal representative of the Estate. On October 15, 2001, the probate court removed Ronnie as personal representative of the Estate and appointed James in his place.

In early May 2003, someone operating a backhoe damaged the earthen dam supporting the eleven-acre, man-made pond on the Pond Tract, and the pond drained completely. On May 5, 2003, detectives with the Dorchester County Sheriff's Office investigated the destruction of the pond. During their investigation, the detectives discovered that the locked gate to the pond had been forcibly torn down, and backhoe tracks were

---

1.  *See* S.C.Code Ann. § 62–3–911 (2009) ("When two or more heirs or devisees are entitled to distribution of undivided interests in any personal or real property of the estate, the personal representative or one or more of the heirs or devisees may petition the court prior to the closing of the estate, to make partition.").

2.  The property was not partitioned as the result of that suit.

found leading from the breached dam into Ronnie's backyard where his backhoe was located.

On November 7, 2003, James again petitioned the probate court to partition the property. In his petition, James requested the probate court take into consideration the co-devisees' conduct before issuing an order equitably partitioning the subject property, including "Ronnie F. Judy's negligent, grossly negligent, or intentional acts causing the destruction of the fishing pond located on the subject property." During the partition hearing, James presented expert testimony that established the value of the Pond Tract would have been worth $1,000 more per acre had the pond not been destroyed.

By order dated January 7, 2004, the probate court granted the requested relief. The probate court awarded ownership of the Pond Tract to James and the 10.9–acre Tract and Homestead Tract to Ronnie. In assessing the value of the three parcels, the court did not consider Ronnie's "alleged destruction" of the pond because James specifically withdrew this claim and requested that the court not "factor in such loss of value when computing the amount of property each party shall receive." The court held "all other issues regarding money owed to either party on these parcels of land to be moot."

On November 29, 2005, James filed an action against Ronnie in circuit court arising out of the destruction of the man-made pond.[3] In his Complaint, James alleged "the acts of [Ronnie] in willfully and maliciously destroying the earthen dam of Rumph's pond constitute[d] waste." Due to the loss of the pond, James sought actual and punitive damages. In response, Ronnie filed a *pro se* Answer in which he generally denied the allegations. On the eve of trial, Ronnie's recently-retained counsel moved to dismiss for lack of subject matter jurisdiction on the grounds that James's lawsuit was barred by the doctrines of laches, collateral estoppel, and *res judicata.* Additionally, counsel moved to amend Ronnie's Answer to add the defense of waiver.

---

3. Weeks later, James sold the Pond Tract for $1,280,000. Notably, in his petition to the probate court, the appraiser hired by James assigned the Pond Tract a value of $375,000.

On April 9, 2007, the circuit court conducted a jury trial on James's cause of action for waste. Prior to trial, the circuit court denied Ronnie's motion to dismiss but indicated that the issues could be addressed at the directed verdict stage of the trial.

During the trial, the probate court's order was introduced as evidence and discussed during James's testimony. During James's cross-examination, he acknowledged that he had filed an action in probate court alleging that Ronnie destroyed the dam but requested that the probate court not rule on the matter because he "would settle this at a later date." James further admitted that his expert, who testified during the circuit court proceedings, testified at the probate court hearing regarding the reduction in the overall value of the Pond Tract due to the destruction of the pond.

At the close of the case, Ronnie renewed his motion to dismiss. In denying the motion to dismiss, the circuit court found an "ambiguity" in the probate court's order that was to be construed in favor of James.

Subsequently, Ronnie moved to amend his Answer to allege the doctrines of laches, waiver, *res judicata*, and collateral estoppel. Although the court permitted the amendments with the exception of waiver, the court ruled against Ronnie and submitted the case to the jury.

The jury found in favor of James and awarded him $67,350 actual damages and $22,650 punitive damages.

After the circuit court denied Ronnie's post-trial motions, Ronnie appealed to the Court of Appeals. The Court of Appeals affirmed the circuit court's refusal to dismiss James's suit on the basis of collateral estoppel and laches, but found that James's suit for waste was barred on the basis of *res judicata*. *Judy v. Judy*, 383 S.C. 1, 677 S.E.2d 213 (Ct.App. 2009).[4] In reaching this conclusion, the court held "the identity of the subject matter of the two suits rests not in their forms of action or the relief sought, but rather, in the combination of the facts and law that give rise to a claim for relief." *Id.* at 10, 677 S.E.2d at 218.

---

4. Based on its decision, the court declined to rule on the issue of waiver. *Judy*, 383 S.C. at 10, 677 S.E.2d at 219.

## II. Discussion

■ James contends the Court of Appeals erred in finding that his lawsuit for waste was barred by *res judicata*. In support of this contention, James claims the prior probate court action was conducted for the limited purpose of partitioning the real property of the Estate. Because the subject matter of his waste claim was not identical to the partition action, James asserts that the requisite elements of the doctrine of *res judicata* were not satisfied. Thus, he avers that he should not have been precluded from pursuing his claim for waste in the circuit court.

■ There are very few reported cases discussing the tort of waste. However, one decision defined this tort as: "At common law, waste is any permanent injury to lands, houses, gardens, trees, or other corporeal hereditaments done or permitted by the tenant of an estate less than a fee to the prejudice of him in reversion or remainder." *Wingard v. Lee,* 287 S.C. 57, 60, 336 S.E.2d 498, 500 (Ct.App.1985). "Waste may be committed by acts or omissions which tend to the lasting destruction, deterioration, or material alteration of the freehold and the improvements thereto or which diminish the permanent value of the inheritance." *Id.* "Whether particular acts or omissions constitute waste depends on matters of fact, including: the nature, purpose, and duration of the tenancy; the character of the property; whether the acts complained of are related to the use and enjoyment of the property; whether the use is reasonable in the circumstances; and whether the acts complained of are reasonably necessary to effectuate such use." *Id.*

■ In order for *res judicata* to operate as a bar to James's lawsuit for waste, the following elements needed to be proven: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit. *Riedman Corp. v. Greenville Steel Structures, Inc.,* 308 S.C. 467, 419 S.E.2d 217 (1992).

Our courts, however, have found that the doctrine of *res judicata* is not an "ironclad" bar to a later lawsuit. *Garris v. Governing Bd. of the South Carolina Reinsurance Facility,* 333 S.C. 432, 449, 511 S.E.2d 48, 57 (1998).

Significantly, the *Restatement (Second) of Judgments* has recognized exceptions to the application of this doctrine.[5] *See Restatement (Second) of Judgments* § 26 (1982 & Supp.2011); *id.* (noting in commentary that section 26 "presents a set of exceptional cases in which, after judgment that would otherwise extinguish the claim under the rules of merger or bar . . ., the plaintiff is nevertheless free to maintain a second action on the same claim or part of it.").

In view of these exceptions, we must answer the threshold question of whether the probate court had subject matter jurisdiction to adjudicate James's claim for waste. *See Anderson v. Anderson*, 299 S.C. 110, 115, 382 S.E.2d 897, 900 (1989) (differentiating jurisdiction of the probate court and the circuit court; recognizing that lack of subject matter jurisdiction may not be waived and should be taken notice of by this Court).

If the probate court was without jurisdiction to adjudicate this claim, then our analysis ends as James could have only pursued his claim in circuit court. Thus, under the exception identified in section 26(1)(c) of the *Restatement (Second) of Judgments*, *res judicata* could not have operated to bar James's lawsuit for waste. Alternatively, if the probate court had jurisdiction over the claim of waste, we must then determine whether the elements of *res judicata* were proven.

---

5. Section 26 of the *Restatement (Second) of Judgments* provides in relevant part:

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
>
> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
>
> *(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.*

*Restatement (Second) of Judgments* § 26 (1982 & Supp.2011) (emphasis added).

■■■■■ Turning to the jurisdiction of the probate court, we have definitively recognized that the probate court is not a constitutional court. *See Davis v. Davis,* 214 S.C. 247, 52 S.E.2d 192 (1949) (recognizing the probate court has only such jurisdiction as vested in it by the General Assembly); S.C. Const. art. V, § 12 ("Jurisdiction in matters testamentary and of administration ... shall be vested as the General Assembly may provide, consistent with the provisions of Section 1 of this article."); *see also Anderson,* 299 S.C. at 115, 382 S.E.2d at 900 ("The jurisdiction of a court over the subject matter of a proceeding is determined by the Constitution, the laws of the state, and is fundamental."). Thus, the extent of the probate court's jurisdiction is defined by our legislature. A decision regarding the jurisdiction of the probate court requires us to review two statutes, sections 62–1–302 and 62–3–620 of the South Carolina Code.

Section 62–1–302 generally defines the probate court's jurisdiction and provides in pertinent part:

(a) To the full extent permitted by the Constitution, and except as otherwise specifically provided, the probate court has exclusive original jurisdiction *over all subject matter related to:*

(1) estates of decedents, including the contest of wills, construction of wills, and determination of heirs and successors of decedents and estates of protected persons.

S.C.Code Ann. § 62–1–302(a)(1) (2009 & Supp.2010) (emphasis added). In conjunction with this code section, the general definitional section in the Probate Court defines "claims" as including "liabilities of the decedent or protected person whether arising in contract, *in tort,* or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator...." S.C.Code Ann. § 62–1–201(4) (2009) (emphasis added).

Given the broad wording of the above-outlined code sections, particularly the phrase "all subject matter related to estates of decedents," we find the probate court was statutorily authorized to rule on the waste action.

Moreover, although the tort of waste is generally filed in circuit court, the General Assembly has provided limited jurisdiction for the probate court to consider actions for waste in

the context of testamentary matters. Specifically, section 62–3–620 states:

> The judge of probate of the county in which a deceased person may have died may, either of his own accord or at the instance of any creditor or other person interested in the estate of the deceased, cite before him such person as, *neither being appointed personal representative nor having obtained administration of the effects of such deceased person,* shall nevertheless possess himself of the goods, chattels, rights, and credits of such person deceased and, upon such person being cited as aforesaid, the judge of probate shall require of him a discovery and account of all and singular the goods, chattels, rights, and credits of the deceased and *shall proceed to decree against him for the value of the estate and effects of the deceased which he may have wasted or which may have been lost by his illegal interference,* charging him as executors of their own wrong are made liable at common law as far as assets shall have come into his hands.

S.C.Code Ann. § 62–3–620 (2009) (emphasis added); *see Greenfield v. Greenfield,* 245 S.C. 604, 614, 141 S.E.2d 920, 926 (1965) (discussing the precursor to section 62–3–620 and stating "the statute authorizes the entry of a judgment against the executor de son tort for the value of such assets as may have been wasted or lost by the illegal interference").

Applying the foregoing to the facts of the instant case, we conclude the probate court had jurisdiction to consider James's claim for waste given Ronnie's conduct classified him as an "executor de son tort" under section 62–3–620.

At the time Ronnie allegedly destroyed the pond in May 2003, he was no longer the personal representative of the Estate as the probate court had replaced him and appointed James in October 2001. Therefore, Ronnie's destruction of the Estate's real property operated to place James's claim within the purview of section 62–3–620 and, in turn, authorized the probate court to adjudicate this claim. *See Haley v. Thames,* 30 S.C. 270, 276, 9 S.E. 110, 112 (1889) (discussing precursor to section 62–3–620 and defining "executor de son tort" as "[i]f a stranger takes upon himself the office of

executor by intrusion, not being so constituted by the demand nor appointed administrator" (citation omitted)).

Furthermore, this Court has found that where a court has jurisdiction over a partition action then any cause of action that is incident to the right of partition, including waste, should simultaneously be adjudicated. *Vaughn v. Lanford*, 81 S.C. 282, 62 S.E. 316 (1908). In *Vaughn*, this Court stated that "[a]ccounting for waste, for betterments, and for rents among cotenants is now recognized as an incident to the right of partition, and the universal practice of the court of equity is to adjust all these matters in the suit for partition." *Id.* at 288, 62 S.E. at 318. The Court explained that where a court has proper jurisdiction of a partition case "there is hardly any question in relation to property which this Court may not determine incidentally for the purpose of doing complete justice and preventing multiplicity of litigation." *Id.* In reaching this conclusion, the Court reasoned that "[t]his rule is just and in accord with the principle that, when all the parties and the property are before the court of equity, it will do full justice to all before releasing its hold." *Id.* at 289, 62 S.E. at 319.

█ Having found the probate court had jurisdiction to adjudicate James's claim of waste, the question becomes whether the "identity of the subject matter" between the partition action and the waste action was the same for the purposes of *res judicata*.[6]

█ Although there is no dispute in our jurisprudence regarding the three elements of *res judicata*, our courts have utilized at least four tests in determining whether a claim should have been raised in a prior suit.[7] Because a determi-

---

6. We have confined our analysis to the critical element regarding the "identity of the subject matter" as there is no dispute regarding the remaining two elements, *i.e.*, the identity of the parties and adjudication of the issue in the former suit.

7. *See* James F. Flanagan, *South Carolina Civil Procedure* 649–50 (2d ed. 1996) ("South Carolina courts have used at least four tests to determine when a claim should have been raised in the first suit: (1) when there is identity of the subject matter in both cases; (2) when the first and second cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; (3) when there is the

nation of whether *res judicata* precludes a subsequent suit cannot be reduced to a formulaic process, we decline to adopt or attempt to define a single standard. *See Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir.1990) ("There is no simple test to determine what constitutes the same cause of action for res judicata purposes. Each case presents different facts that must be assessed within the conceptual framework of the doctrine.").

■■■■ Instead, we reiterate and rely on the conceptual framework recognized in *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 512 S.E.2d 106 (1999), wherein we stated:

> Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit."

*Id.* at 34, 512 S.E.2d at 109 (citations omitted).

■■■ In *Plum Creek*, we also recognized that simply seeking a different remedy in the second lawsuit for the same cause of action does not negate the identical nature of the subjects of the two actions. *Plum Creek Dev. Co.*, 334 S.C. at 35 n. 4, 512 S.E.2d at 109 n. 4. We explained that "[a] claim for damages is a claim for relief rather than an assertion of a different cause of action for purposes of determining the applicability of res judicata." *Id.* at 35, 512 S.E.2d at 109 (quoting 46 Am.Jur.2d *Judgments* § 536 (1994)). Furthermore, we noted that "for purposes of res judicata, 'cause of action' is not the form of action in which a claim is asserted but, rather the 'cause for action, meaning the underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon.'" *Id.* at 36, 512 S.E.2d at 110 (quoting 50 C.J.S. *Judgment* § 749 (1997)).

---

same evidence in both cases; and recently, (4) when the claims arise out of the same transaction or occurrence that is the subject of the prior action.").

▮▮▮▮ Because this conceptual framework is fundamentally sound, we take this opportunity to definitively rule that the four tests previously used by our appellate courts should be considered merely as factors rather than rigid, independent tests.[8] We believe this approach effectuates the fundamental purpose of *res judicata*, which is to ensure that "no one should be twice sued for the same cause of action." *First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.*, 207 S.C. 15, 24, 35 S.E.2d 47, 56 (1945).

▮▮▮ Cognizant of this conceptual framework, we conclude that James clearly raised a waste cause of action in his probate court pleadings. Even though James did not delineate waste as a separate cause of action, the allegations in his pleadings set forth the elements of this tort. James, however, specifically requested that the probate court not rule on this claim. Due to James's request, the probate court withheld a ruling on this issue.

Because the tort duties that were breached and the evidence was the same in both proceedings, there was "identity of subject matter" for the purposes of *res judicata*. Yet, in violation of the doctrine of *res judicata*, James attempted to "split" his cause of action for waste by pursuing and procuring another remedy in circuit court for an identical claim. Given the probate court could have fully adjudicated the waste cause of action, James was precluded from initiating a second lawsuit in the circuit court as this cause of action could have been raised in the former suit. Furthermore, the probate court definitively resolved James's claims regarding the property by ruling that it would "consider all other issues regarding money owed to either party on these parcels of land to be moot."

▮▮▮ Even if the probate court could have adjudicated his claim for waste, James contends that the probate court could not have awarded punitive damages; thus, he asserts that *res*

---

8. Although we implicitly recognized this distinction in *Plum Creek*, we did not affirmatively resolve the application and import of the four tests. *Plum Creek Dev. Co.*, 334 S.C. at 35 n. 3, 512 S.E.2d at 109 n. 3 (discussing the doctrine of *res judicata* and referencing, but not definitively relying on, the four tests used by South Carolina courts in determining whether a claim should have been raised in a prior suit).

*judicata* should not operate as a bar to recovering these damages in circuit court.

We disagree with James's arguments given he chose the probate court as the forum to adjudicate his claims for partition and waste of the Estate property. If he desired to recover punitive damages, James could have filed both claims in circuit court or removed his lawsuit in its entirety to the circuit court for an adjudication of all claims. *See* S.C.Code Ann. § 15–61–50 (2005) (providing circuit court with jurisdiction to partition in kind or by sale real and personal estates); S.C.Code Ann. § 62–1–302(d)(5) (2009) (providing "actions in which a party has a right to trial by jury and which involve an amount in controversy of at least five thousand dollars in value" must be removed to the circuit court). Accordingly, we hold that James's election to proceed in probate court effectively waived his right to recover punitive damages.

### III. Conclusion

Based on the foregoing, we find *res judicata* precluded James from adjudicating his lawsuit for waste in the circuit court.[9] Therefore, the decision of the Court of Appeals is

**AFFIRMED.**

KITTREDGE and HEARN, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which PLEICONES, J., concurs.

---

**9.** The dissent based its position to reverse on its view that Respondent acquiesced in Petitioner's splitting of his claim. However, there is no evidence in the record before us that Respondent acquiesced. It is undisputed that Petitioner raised the issue of waste in the probate court and offered expert testimony in support of his position and the amount of damages he suffered. It is also undisputed that Petitioner, without explanation, requested that the court not consider Respondent's waste. A litigant is not required to object to a withdrawal of a claim against him, nor is there a requirement that he demand an explanation for the generosity of his opponent, especially if the opponent is his brother.

Moreover, it is undisputed that the trial court's order specifically stated it "considered *all* other issues regarding money owed to either party on these parcels of land to be *moot*." (emphasis added). This ruling by the probate court would reasonably lead any litigant to believe that all issues regarding the property were resolved. The Petitioner did not object; therefore, if we apply the dissent's logic, we would have to conclude that Petitioner acquiesced in waiving his waste claim.

Chief Justice TOAL.

I respectfully dissent. Although I agree with the majority that the doctrine of res judicata would ordinarily bar James Judy's tort action for waste, I believe this case is excepted from claim preclusion under section 26, subsection 1(a) of the *Restatements (Second) of Judgments.* That section provides:

(1) When any of the following circumstances exists, the general rule of [claim preclusion] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The parties have agreed in terms or in effect that the plaintiff may split the claim, or *the defendant acquiesced therein;*

. . . .

*Restatement (Second) of Judgments* § 26 (1982 & Supp.2011) (emphasis added).

In *Beazer East, Inc. v. United States Navy,* the United States Court of Appeals for the Fourth Circuit cited this Restatement exception, stating, "acquiescence to the filing of two separate lawsuits has also been determined to constitute consent." No. 96–1736, 1997 WL 173225 (4th Cir. Apr.11, 1997). In that case, the court found the defendant did not acquiesce in the plaintiff's splitting of claims by filing an opposition to plaintiff's motion to consolidate the claims. *Id.* In the instant case, James requested the probate court consider Ronnie's willful destruction of the fishing pond located on the Pond Tract in his Petition to Partition Real Property. At the partition hearing, James produced an expert who testified the property was worth $1,000 less per acre without the pond. However, before the probate court issued its order partitioning the property, James requested that the court not consider that loss of value when computing the amount each party would receive. There is no evidence in the record that Ronnie objected to this request. Therefore, in my opinion, Ronnie cannot invoke the doctrine of res judicata as protection against a tort action in circuit court, aimed at righting the wrong he allegedly committed, when he allowed that claim to be ignored during the action for partition in probate court. I would reverse the court of appeals' decision that the circuit court

action was barred on the basis of res judicata, and reinstate the circuit court order awarding actual and punitive damages to James.

PLEICONES, J., concurs.